GreeN, Judge,
delivered the opinion of the court:
The petition alleges that Jak Eobert Sigg-Fehr (deceased when this action was begun) and two other parties named in the title of the action (all citizens of Switzerland) were •and are the owners of certain property which in the year 1913 was illegally seized by the Alien ProjDerty Custodian of the United States and by him purported to be sold to the Director General of Eailroads of the United States; that this property consisted of certain shares of stock for which the Director General paid the Alien Property Custodian $200 a share, or a total of $2,565,000, as the purported price; that the Director General, during the' time he held such property, received dividends on said stock to the amount ■of $448,875 and sold the same at the rate of $248 a share, aggregating $3,180,600, which sum, together with the said dividends, making a total of $3,629,475, was by the Director General covered into the Treasury of the United States; that at the time when the said shares of stock were purported to be sold by the Alien Property Custodian to the Director General of Eailroads they had a market value of .$300 a share.
The petition further alleges that in December, 1921, the former owners of the stock brought a suit in equity under section 9 of the trading-with-the-enemy act in the Supreme Court of the District of Columbia against the Alien Property Custodian and the Treasurer of the United States, in which suit they sought a decree determining their ownership and adjudging that the shares of stock or the proceeds therefrom,, including the $248 a share received by the Director General of Eailroads, as well as the dividends received by him and by the Alien Property Custodian, be paid over to them; that in January, 1928, a final decree was rendered in that suit in favor of the plaintiffs adjudging that the plaintiffs were in fact the owners of the stock at the time of the seizure and directing the return of the stock to them, or in event the Alien Property Custodian had .sold the same, that there be paid to them the proceeds of such sale; that pursuant to the decree in the suit last referred to the Alien Property Custodian and the Treasurer ■of the United States paid to plaintiffs the sum of $2,565,000 *475 representing the purchase price of $200 a share paid by the Director General of Railroads to the Alien Property ■Custodian, but not including any profit realized by the Director General of Railroads or any of the dividends received by him on the stock so sold.
The petition in the case at bar further avers that the seizure of the stock did not operate to divest the plaintiffs •of the ownership thereof, and that the sum of $1,064,475 received by the Director General of Railroads over and ■above the price he paid to the Alien Property Custodian was received in equity and good conscience to the use and .account of plaintiffs, and by reason of that fact the United States is justly and truly indebted to the plaintiffs in that ■sum with interest from' the time that the money was received by the Director General of Railroads and was covered by him into the Treasury.
Plaintiffs therefore ask judgment in the sum of $1,064,475.
The defendant demurs to the petition on the following .grounds:
(1) That this court has no jurisdiction of the alleged cause of action set forth in the petition.
(2) That the petition does not state facts sufficient to constitute a cause of action.
(3) That it appears on the face of the petition that the alleged cause of action accrued more than six years prior to the commencement of the action.
(4) That it appears on the face of the petition that the plaintiffs heretofore brought an action against the defendant in the Supreme Court of the District of Columbia for the same cause of action as is alleged in the petition herein and that the said plaintiffs duly recovered judgment therein upon the merits against the defendant.
In determining the questions presented by the demurrer, there are two principles that must be kept in mind: First, that this court has only such jurisdiction as is conferred upon it by statute; second, that suits against the United States can only be brought in such manner and under such terms and conditions as are provided by statute. Applying these principles, it becomes necessary to determine what right *476 of action, if any, is given the plaintiff in cases such as the' one at bar, and how, if at all, this right is limited.
Turning to the statute, we find that section 7, subsection (c), paragraph 4, of the trading-with-the-enemy act (act of October 6, 1917), to which was added an amendment enacted on November 4, 1918, 40 Stat. 1021, provides as. follows:
“ The sole relief and remedy of any person having any claim to any money or other property heretofore or hereafter conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or required so to be, or seized by him shall be that provided by the terms of this, act, and in the event of sale or other disposition of such, property by the Alien Property Custodian, shall be limited to and enforced against the net proceeds received therefrom and held by the Alien Property Custodian or by the Treasurer of the United States.”
If this provision is constitutional it is plain that whatever remedy the plaintiffs have for the actions complained of m their petition must “ be that provided by the terms of this act.”
Section 9 of the act, as amended by the act of July 11, 1919, 41 Stat. 35, provides, among other things, that any person not an enemy or ally of enemy claiming any interest, right, or title to property taken over by the Alien Property Custodian may, after compliance with certain preliminary requirements “ institute a • suit in equity in the Supreme Court of the District of Columbia * * * (to which suit the Alien Property Custodian or the Treasurer of the United States, as the case may be, shall be made a party defendant), to establish the interest, right, title, or debt so claimed.”
The remainder of the paragraph of the statute in which this quotation is made would seem to apply more particularly to cases where a person not an enemy or an ally of the enemy claims some interest in the property without claiming complete ownership thereof, but a careful reading of the whole of the section as amended convinces us that this section was intended to apply also to cases where, as in the case before the court, a claim was made of complete ownership by persons not enemies or allies of the enemy.
*477 Our principal reason for this holding is that an examination of the act as a whole shows that if the provisions of section 9 are not applied no remedy whatever is granted to persons whose property has been seized and who are not enemies or allies of the enemy, and a reading merely of the provisions quoted shows plainly, in our opinion, that it was intended to give a remedy to such persons.
The argument for the plaintiffs is that while it may have been necessary in the first instance to commence their action in accordance with the provisions of section 9 to determine their ownership of the property, they are not limited to the proceedings described in this section but may, if they have not received the full value of the property seized thereunder, bring another suit against the United States to recover the remainder of the value of the property for which they have not been paid. In this connection it is contended by plaintiffs- that as the property was not in fact enemy property its seizure was not authorized. We do not think the claim that the seizure was not authorized merits extended discussion. The language of the trading-with-the-enemy act makes it clear that it was anticipated that in some instances property other than that of the enemy would be seized and taken over under it. Indeed, this was absolutely necessary to make the act effective. If the Alien Property Custodian always had to stop and have ascertained whether the property about to be seized was in fact the property of an enemy, the act would inevitably break down, for the greater part of persons whose property was seized would claim that the act did not apply to them.
The real basis of the argument on behalf of plaintiffs that they are not limited to the action provided by section 9 appears to be founded in the claim that it did not afford them full and proper relief. They contend that the provisions of section 7 that “in the event of sale or other disposition of such property by the Alien Property Custodian (the sole relief and remedy), shall be limited to and enforced against the net proceeds received therefrom and held by the Alien Property Custodian or by the Treasurer of the. United States,” have no application herein, and in support of this *478 contention it is urged in effect that it would not be constitutional to so limit the recovery in a case like the one at bar, and that even if this portion of the statute be held valid, it has no application to the instant case for the reason that there was in fact no legal sale.
We have no occasion to determine the validity of these contentions, but in connection with the claim that the statute is unconstitutional, it should be noted that the plaintiffs are not citizens of the United States. It seems to be conceded by plaintiffs that in the first instance, at least, the provisions of section 9 apply to cases where the property of a person not an enemy or an ally of an enemy had been seized, and they proceeded accordingly to commence their action in the Supreme Court of the District of Columbia. It having been determined that the provisions of section 9 apply, the only remaining question is whether plaintiffs were limited to the relief it gave.
In determining this question, as before stated, it is not necessary to pass on the validity of the provisions of section 7 which declare that the sole relief and remedy of any person having any claim to property seized by the Alien Property Custodian “ shall be that provided by the terms of this act, and in the event of sale or other disposition of such property by the Alien Property Custodian, shall be limited to and enforced against-the net proceeds received therefrom and held by the Alien Property Custodian or by the Treasurer of the United States.” Clearly Congress had the right to prescribe, as it did in section 9, where the suit should be commenced and against whom, and in our opinion, the questions as to the validity of the provisions of section 7 should have been submitted to- the Supreme Court of the District of Columbia. Whether they were so submitted, and if so whether the decision thereon was correct, are questions that are not necessary for us to consider or decide. If, as plaintiffs claim, the provisions to which they object were either invalid or inapplicable, they had the right to present this contention to that court, and whether so presented or not, when final judgment was entered in the suit which they had commenced, this, we think, was the end of plaintiffs’ case. When Congress provided the place and manner of commenc *479 ing a suit on behalf of a person whose property had been seized and who was not an enemy or an ally of an enemy, the effect was to exclude all other jurisdictions. “Where a statute creates a right and provides a special remedy, that remedy is exclusive.” United States v. Babcock, 250 U. S. 328, 331. And this principle is especially applicable where Congress has conferred jurisdiction upon some court for the purpose of suit against the United States for compensation. United States v. Pfitsch, 256 U. S. 547, 552. Plaintiffs could not bring one suit in the courts of the District of Columbia to recover the value of their property seized, and then another in this court on the ground that they had not received full relief in the court provided by the act. It should be said also that while this suit is against the United States itself and the other suit was against the Alien Property Custodian and the Treasurer of the United States, these parties were the representatives of the Government, and a judgment in a suit against them had the same effect as a, judgment in a case against the Government provided the issues were the same. In such a case the plaintiffs can no more bring another suit to recover the value of the property than could a taxpayer, who had brought suit against a Government tax collector to recover the value of property seized for payment of taxes, in which he failed, bring another suit, against the Government to recover the value of the- same-property.. In our opinion, the judgment rendered in the Supreme Court of the District of Columbia made the matter-at issue in this case res adjudieata, and even if it did not, this-court has no jurisdiction to consider the action brought, because Congress has provided another and a different remedy.
The views above expressed make "it unnecessary for. us to-determiné whether the case is barred by the statute of limitations.
It follows that the demurrer should be sustained and it is; accordingly ordered that plaintiffs’ petition be dismissed.
Williams, Judge, and LittletoN, Judge, did not hear and took no part in the decision of this case.
Graham, Judge, and Booth, Chief Justice, concur.