## CASTELL v. UNITED STATES.
### No. L—167.

Court of Claims.
May 4, 1936.

This case having been heard by the Court of Claims, the court, upon the evidence adduced, makes the following special findings of fact:

1. The petition in this action was originally filed by Beta Isenberg May 5, 1930. Beta Isenberg was born in. Bremen,. Germany, in 1846, and in 1869 was married to Paul Isenberg. In 1874 Paul Isenberg became a naturalized citizen of Hawaii. In 1900, as a result of an act of Congress making citizens of Hawaii citizens of the United States, Paul Isenberg and his wife, Beta Isenberg, became citizens of the United States.

Prior to the death of her husband in 1903, Beta Isenberg had lived part of the time in Hawaii and the remainder of the time in Germany, having been in each of those places from time to time during that period. After her husband's death, she did not return to Hawaii, but, except as indicated below, lived at No. 19 Contrascarpe, Bremen, Germany, in a house which her husband had purchased in 1884 and which she inherited from him at his death. She came to the United States from Germany in March, 1923, to visit her daughter and returned in July, 1923, with her daughter, going from the United States to England and continental Europe, including Germany. She returned to the United States in October, 1923. Having been informed of the serious illness of her sister, she returned to Germany in May, 1924. She remained in Germany from May, 1924, until her death March 10, 1933, at Bremen. About 1925 she gave her feeble condition and ill health as the reason for remaining in Germany.

Thereafter, by appropriate motion, George O. Castell, the duly appointed and acting ancillary executor under the last will and testament of Beta Isenberg, was substituted as plaintiff. The said George O. Castell is a citizen of the United States, has at all times borne true allegiance to the United States, and has not in any way aided, abetted, or given encouragement to rebellion against the United States.

2. During the calendar year 1917 Beta Isenberg owned certain stocks and bonds of corporations doing business in the Territory of Hawaii. That property was then held for Beta Isenberg, under a power of attorney from her, by H. Hackfeld & Co., Limited, an American corporation organized under the laws of California, with its principal place of business in Honolulu, Hawaii. December 31, 1917, the aforementioned corporation received for Beta Isenberg 'and credited to her account on its books certain income from such property.

3. February 27, 1918, the then Alien Property Custodian, pursuant to the Trading with the Enemy Act, 40 Stat. 411 (see 50 U.S.C.A.Appendix, § 1 et seq.), seized and acquired all property of Beta Isenberg in Hawaii, including the income referred to in the preceding finding. That property was subsequently held and administered by the Alien Property Custodian under the designation "Trust No. 12,611," and, except for administration expenses (including federal taxes), the proceeds of the property and net accretions thereto were returned by the Alien Property Custodian to Beta Isenberg in installments during the years 1926, 1927, and 1928, under the following circumstances:

April 17, 1925, Beta Isenberg, through her attorneys, filed a bill in equity in the Supreme Court of the District of Columbia against Frederick C. Hicks, Alien Property Custodian, and Frank White, Treasurer of the United States, under section 9 of the Trading with the Enemy Act, as amended by Act March 4, 1923, § 1 (50 U.S.C.A. Appendix, § 9 note), for the return of her seized property. In said cause the Supreme Court of the District of Columbia entered a final decree February 20, 1926, for the return of the property and proceeds of the sale of all or any part thereof, together with accretions thereto, income thereon, or increase thereof. The defendants noted an appeal from that decree, which appeal, on motion of the defendants, was dismissed April 8, 1926, prior to the hearing thereof.

4. March 31, 1924, the Alien Property Custodian, on behalf of Beta Isenberg, paid the collector of internal revenue for the

district of Maryland $600,810.70 as Beta Isenberg's individual income tax for the calendar year 1919.

5. August 18, 1926, the Commissioner of Internal Revenue determined that Beta Isenberg's income tax for the calendar year 1919 had been overpaid in the amount of $450,783.52. That overpayment was paid to the Alien Property Custodian on behalf of Beta Isenberg in the manner hereinafter stated, and is not contested nor is it in controversy herein. Of the aforementioned overpayment the Commissioner credited $49,821.62 to additional assessments of income taxes against Beta Isenberg for the years 1921 to 1925, both inclusive; $2,695.15 to accrued interest on income taxes of Beta Isenberg for the years 1921 to 1923, both inclusive, and on September 1, 1926, refunded to the Alien Property Custodian on behalf of Beta Isenberg, $398,266.75.

6. Subsequently the Commissioner determined that interest was allowable to Beta Isenberg under section 1116 of the Revenue Act of 1926 (26 U.S.C.A. § 1671 note), on the overpayment for 1919 referred to in finding 5, in the amount of $60,757.21. There is no dispute as to the correctness of the interest computation. Of the foregoing amount of $60,757.21, $34,922.69 was paid to the Alien Property Custodian March 14, 1927, on account of trust No. 12,611, for Beta Isenberg, and is not contested, nor is it in controversy herein. The balance of $25,834.52 is the amount here in controversy. Prior to making payment of the foregoing amount of $34,922.69 the Commissioner on December 1, 1926, scheduled the entire amount of $60,757.21 to the collector of internal revenue for the District of Hawaii, with the following directions:

"The following item representing interest allowed on overassessment for the year 1919 and covered by notice of interest allowance is listed on this schedule as the collector's authority to credit as much as necessary of the interest due to the taxpayer in connection with her 1919 overassessment to outstanding tax and interest thereon due from the taxpayer for the year 1917 and to certify the balance for payment."

On the same day the assistant to the Commissioner wrote a letter to the collector of internal revenue for the district of Hawaii, stating in part as follows:

"Transmitted herewith is schedule 23115 carrying notice of interest allowance ($60,757.21), representing interest allowed to the above-named taxpayer [Beta Isenberg] on an overassessment for 1919 and certificate of overassessment ($28,680.00) for the year 1917. While it is not the general practice of this office to credit amounts allowed as interest, such action is contemplated in the instant case by reason of the fact that there appears to be delinquent tax outstanding for 1917 on which considerable amount of interest has accrued and which would soon become uncollectible by the expiration of the statutory period for its collection."

December 13, 1926, the collector carried out the aforesaid instructions and applied $19,094.83 of the interest allowance to an additional assessment of income tax against Beta Isenberg for the calendar year 1917, and $6,739.69 to interest on the additional assessment for 1917. That action was approved by the Commissioner by appropriate schedule under date of January 7, 1927.

On or about March 14, 1927, the Commissioner mailed to the Alien Property Custodian on behalf of Beta Isenberg a notice of interest allowance with respect to the overpayment for 1919, on which he showed that $25,834.52 of the interest allowed had been credited, as indicated above, against additional tax and interest for 1917. A check for $34,922.69, the balance of the interest allowance of $60,757.21, was included with the foregoing notice.

At the time the foregoing credits were made the statutory period for collection of any additional income tax from Beta Isenberg for the calendar year 1917 and interest thereon had expired.

June 23, 1927, attorneys for Beta Isenberg protested against the action of the Commissioner in making the credit of $25,834.52 against the additional income tax for 1917 and interest thereon and demanded refund and payment to Beta Isenberg of the amount of $25,834.52 so applied by the Commissioner, on the ground that the collection of the amounts against which the credit had been made in said sum was barred by the applicable statute of limitations.

To that demand the deputy commissioner of internal revenue replied by letter dated February 11, 1928, in part as follows:

" * * * It is believed that in view of the great uncertainty as to the whole matter, no action toward making refunds should be taken by the Bureau in reliance upon the New York and Albany Literage

Company decision, unless and until the situation is clarified by further court decisions or by legislative action. This applies equally to those cases in which overassessments have been credited to a year, collection of the outstanding tax for which may apparently be barred by the statute of limitations."

7. July 24, 1928, the assistant to the Commissioner instructed the collector of internal revenue for the district of Hawaii as follows:

"The Income Tax Unit states that the credits were made after the expiration of the statute of limitations for collection and that further investigation disclosed that the entire interest represents an erroneous allowance in accordance with section 18 (e) of the Settlement of War Claims Act of 1928 [50 U.S.C.A.Appendix, § 24 (e)]. It, therefore, will be necessary for you to reverse the credits totaling $25,834.52 applied to the December 1920 list #22, and the December 1926 list no. 53019.

"Your accounts should be adjusted by debiting account 62 and crediting account 18. Please attach a copy of this letter to the form 820 on which this transaction is reflected. An appropriate notation should be made on your copies of the certificate of overassessment and the schedule. It also will be necessary for you to procure from the Alien Property Custodian a check for $34,922.69 covering the interest refunded. This check should be returned to this office to be deposited as a repayment to the appropriation from which drawn. A form 843 supported by form 53 should be prepared by your office to eliminate the outstanding liabilities as the result of this adjustment."

8. On or about August 7, 1928, the collector complied with the instructions set out in finding 7. The additional tax and interest of $25,834.52 for the calendar year 1917 were thereafter duly abated. The Commissioner refused to pay the said interest of $25,834.52 theretofore allowed to Beta Isenberg, on the ground that section 18 (e) of the Settlement of War Claims Act of 1928 (50 U.S.C.A.Appendix, § 24 (e) prohibited him from making any payment of interest to said Beta Isenberg or on her behalf.

Counsel for Beta Isenberg thereafter duly protested against said action of the Commissioner but the Commissioner has continuously refused to make payment of the said amount of $25,834.52 or any part thereof.

John Enrietto, of Washington, D. C. (Charles D. Hamel, of Washington, D. C., and Brainard Avery and Albert G. Avery, both of New York City, on the briefs), for plaintiff.

Elizabeth B. Davis, of Washington, D. C., and Robert H. Jackson, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

The plaintiff is an executor of the estate of Beta Isenberg, a loyal citizen of the United States, who died March 10, 1933, in Bremen, Germany, where she had resided continuously since the year 1903.

After the United States declared war against Germany, the Alien Property Custodian, acting under the provisions of the Trading with the Enemy Act, 40 Stat. 411 (see 50 U.S.C.A.Appendix, § 1 et seq.), seized certain stocks and bonds belonging to Beta Isenberg. On April 17, 1925, Beta Isenberg brought suit in the Supreme Court of the District of Columbia for the return of her property, and in a final decree dated February 20, 1926, that court ordered that her property together with accretions be returned to her.

In the year 1924 the Alien Property Custodian paid to the United States on behalf of Beta Isenberg the amount of $600,810.70 as income taxes for the year 1919. In 1926 the Commissioner decided that an overpayment had been made in the amount of $450,783.52 which was accordingly paid to Beta Isenberg.

Subsequently the Commissioner determined that Beta Isenberg was entitled to interest on this overpayment in the amount of $60,757.21. Of this amount $34,922.69 was paid to Beta Isenberg, but the remaining amount of $25,834.52 was applied as a credit on delinquent taxes for 1917 and interest thereon. Against this action, Beta Isenberg protested on the ground that the collection of taxes for the year 1917 was barred by the statute of limitations. This protest was sustained and the Commissioner reversed the credit but refused to pay her the $25,834.50 on the ground that section 18 (e) of the Settlement of War Claims Act of 1928 (50 U.S.C.A.Appendix, § 24 (e) prohibited said payment. The plaintiff, as

executor of the estate of Beta Isenberg, now brings suit to recover the sum so withheld.

Section 2 (a) of the Trading with the Enemy Act (50 U.S.C.A.Appendix, § 2 (a) provides:

"§ 2. The word 'enemy,' as used herein, shall be deemed to mean, for the purposes of such trading and of this Act—

"(a) Any individual * * * resident within the territory * * * of any nation with which the United States is at war."

The Settlement of War Claims Act of 1928, 45 Stat. 254, provides in section 18 (50 U.S.C.A.Appendix, § 24) for the amendment of section 24 of the Trading with the Enemy Act and subdivision (e) of section 18 (50 U.S.C.A.Appendix, § 24 (e) reads as follows:

"(e) In case of any internal-revenue tax imposed in respect of property conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian, or seized by him, and imposed in respect of any period (in the taxable year 1917 or any succeeding taxable year) during which such property was held by him or by the Treasurer of the United States, no interest or civil penalty shall be assessed upon, collected from, or paid by or on behalf of, the taxpayer; nor shall any interest be credited or paid to the taxpayer in respect of any credit or refund allowed or made in respect of such tax."

The only question in the case is whether the provisions above set forth are applicable and prohibit the payment of the interest in controversy.

The Trading with the Enemy Act became a law October 6, 1917. The Settlement of War Claims Act was adopted in 1928. In determining the proper construction of these acts, it is necessary not only to consider the language used, but also the purpose of these acts in connection with the circumstances to which they are applicable.

After the war was over and before the War Claims Settlement Act was passed, the courts decided that where the property of a loyal citizen of the United States or a citizen of a neutral country had been seized, the owner could bring a suit against the Alien Property Custodian to have his property restored to him. After the War Claims Settlement Act was passed, questions arose as to the extent of its application and in particular as to whether it had any application to cases involving property other than that of an alien enemy. The case of Escher v. Woods, 281 U.S. 379, 50 S.Ct. 337, 338, 74 L.Ed. 918, although not decided under the War Claims Settlement Act having been begun in 1921, was one in which property owned by a citizen of Switzerland had been mistakenly seized by the Alien Property Custodian and instead of returning the property in its entirety the Custodian sought to deduct expenses incurred in connection therewith under general provisions contained in Presidential Orders and the Act of March 4, 1923, 42 Stat. 1511, 1516, § 2 (50 U.S.C.A.Appendix, § 24 and note). But the Supreme Court held that:

"All of these provisions naturally are interpreted to refer to property that the Custodian is entitled to hold. It would be extraordinary if the charges incident to a seizure that the law did not intend the Custodian to make and a possession that the law requires him to surrender, were to be imposed upon the owner whose interests were sacrificed up to the moment of restitution."

In line with this statement it may be said that it would be extraordinary if a loyal citizen of the United States whose property had been seized and who had undergone the misfortune of having it withheld from him for a long period should, when the government had already done him an injury for which he could recover no damages, be still further injured by being denied the benefits of statutory provisions to which he would have been entitled if the government had not assumed the custody of his property. Obviously no good reason can be given why he should be so treated nor why Congress should have intended such a result.

The converse of this proposition was before the court in the case of United States ex rel. I. G. Farbenindustrie Aktiengesellschaft v. Burnet, 62 App.D.C. 107, 65 F.(2d) 195, 196. In that case an alien enemy whose property had been seized by the Alien Property Custodian contended that he was entitled to interest on an overpayment in respect of income tax collected from the Alien Property Custodian. The overpayment was refunded, but the Commissioner applying section 18 (e) refused to pay any interest on the overpayment, holding that the provisions of the Revenue Act of 1928 did not apply. The court,

construing the War Claims Settlement Act and speaking with reference to the property of alien enemies · which had been seized, said:

"Congress * * * was legislating alone in respect of that class of property and of that class of ownership."

And further that:

"Section 24 [18] (e) * * * placed a limitation upon the payment of interest on taxes refunded under the Settlement of War Claims Act, which related to the special subject of the settlement of 'claims of American nationals against Germany, Austria, and Hungary, and of nationals of Germany, Austria, and Hungary, against the United States, and for the ultimate return of all property held by the Alien Property Custodian.' The Settlement of War Claims Act embraced all·of these subjects, and was in the nature of a final disposition thereof. Congress was here treating with a separate and individual matter unrelated to the Revenue Act of 1928, which contained no reference to the prior act or sought to repeal any of the provisions contained therein."

The question here decided was specifically ruled upon in the case of U. S. ex rel. Escher et al. v. Burnet (not reported). A summary of this decision is found in 1931 C.C.H., par. 9456. In this case the court held that section 24 [18] (e) upon which plaintiff relies did not apply where property of a friendly alien had been wrongfully seized; a fortiori it would not apply where the property of an American citizen had been wrongfully seized.

As before stated, Beta Isenberg filed a bill in equity on April 17, 1925, in the Supreme Court of the District of Columbia against the Alien Property Custodian and the Treasurer of the .United States for the return of her seized property, and that court rendered a final decree February 20, 1926, for the return of the property or the proceeds of its sale and any accretions thereto. When this suit was begun against the Alien Property Custodian, he was acting as the agent for the government and a judgment against him would also be conclusive against the United States. See Escher, Adm'r, v. United States, 68 Ct. Cl. 473 (certiorari denied). ·By this judgment the court also held in effect that Beta Isenberg was not an enemy but a loyal citizen of the United States. Otherwise she had no right of recovery, and she must be so treated in the case now before us. It is so clear that Beta Isenberg when in fact a loyal citizen could not be made a hostile enemy by legislative act that we cannot assume Congress so intended. The main purpose of the Trading with the Enemy Act was to provide for the seizure not only of property which belonged to those who were actually enemies, but also of those who might be enemies or who themselves would be more or less under the control of enemies. We conclude that in applying the term "enemy" to all individuals residing within enemy territory, Congress intended and meant that for the purpose of seizing property and keeping it in custody until its status could be determined such persons were to be regarded as enemies.

We do not think that Faber v. United States, 10 F.Supp. 602, 81 Ct.Cl. 142, when the claims of the plaintiff and the basis of the court's decision are considered, can be deemed an authority to the contrary.

In the case last cited the plaintiff was executor of the estate of a nonresident citizen of the United States whose property had been seized by the Alien Property Custodian, who, on the death of the testatrix, paid to the United States an estate tax which was in part determined by the inclusion of certain administrative expenses. The plaintiff in the case made an altogether different contention from that raised in the case at bar and the questions submitted to and determined by the court were also entirely different. It was claimed by the°plaintiff in that case that, after the property was seized, the testatrix was not ·the owner of any estate in the United States, title and possession being in the Alien Property Custodian. For this reason it was argued that it was not subject to tax under the Revenue Acts in force at that time. It was also contended that section 403 (b) (1) of the Revenue Act of 1918 (40 Stat. 1098) relating to deductions which were allowed in computing estate taxes was unconstitutional as applied to a nonresident citizen of the United States for the reason that while the property was in the custody of the Alien Property Custodian the plaintiff was not the owner thereof. This last objection was, as the opinion in the case states, "the gravamen of the complaint" and its validity depended upon the status of the property while in the hands of the Alien Custodian. The court in considering the effect of the seizure correctly held that the position of the testatrix *"in war times"* (italics supplied)

under the Trading with the Enemy Act was the same as though she had been an alien enemy, but that the title to the property seized did not become vested in the United States, and that the provisions of the Revenue Act of 1918 were not unconstitutional. In other words, that under its war powers the government could take custody of the property, but as held by other courts the government acquired only a possessory right for the time being and the ownership of the property was not lost. No principle was laid down which would conflict with the construction which we have given to the Trading with the Enemy Act.

It is contended on behalf of the defendant that the provisions of the War Claims Settlement Act forbidding the payment of interest on any refund of taxes when property has been seized are general and absolute and that as the property of plaintiff was lawfully seized these provisions must apply. This, we think, must depend upon the construction of the War Claims Settlement Act when considered in the light of the surrounding circumstances and the purpose intended to be effectuated by it. In determining this question, it must not be forgotten that the plaintiff's intestate was not an alien enemy but a loyal citizen and, as said by Mr. Justice Holmes in Escher v. Woods, supra, the property was "mistakenly seized" and the possession acquired was one "that the law requires him [Alien Custodian] to surrender." The War Claims Settlement Act was primarily intended to deal with the claims of alien enemies whose property had been seized. It involved such difficult questions and such a great amount of money or property that the rights of loyal citizens, as to which there was no dispute, appear to have been treated as not being affected by its provisions. The failure to specially exempt the property of loyal citizens from the provisions of a bill designed to dispose of property of alien enemies does not, we think, show that the War Claims Settlement Act was intended to apply to the property of citizens of the United States which had been mistakenly seized. The language used in Escher v. Woods, supra, that "all of these provisions naturally are interpreted to refer to property that the Custodian is entitled to hold"

is equally applicable to the provisions of the War Claims Settlement Act now under consideration and it follows that plaintiff is entitled to recover.

What we have said above makes it unnecessary that we should determine whether plaintiff had any vested rights in the interest which he seeks to recover or whether the provision in question if given the construction contended for by defendant would be constitutional when applied to loyal citizens of the United States. It must be conceded that the government can grant or withhold interest as Congress sees fit to provide and also that it may discriminate between residents and nonresidents as classes, but the classification made for such purposes must be reasonable and it would seem that to allow interest to loyal citizens whose property had not been seized and deny it to those whose property had been seized would be an arbitrary and capricious discrimination. If we are correct in this, it furnishes an additional reason for holding that Congress did not so intend.

[2] Plaintiff seeks to recover not only the balance of the interest which had accrued on the refund, amounting to $25,834.52, but also interest on this sum from January 7, 1927, to March 3, 1933. This claim for interest on interest is based on the Act of March 3, 1875, as amended by the Act of March 3, 1933, § 13 (31 U.S.C.A. § 227). But we do not think this statute has any application to the case. It will be observed that the Commissioner in his first action allowed the interest on the refund, paid part of it, and credited the balance now in suit upon other taxes. Subsequently he reversed his ruling with reference to the credit of the taxes and held that he was restrained from making any further payment of interest by the provisions of the War Claims Settlement Act. We need not determine whether this last ruling had the effect of setting aside the one that he had first made. In either event the case is not covered by the language of the statute and plaintiff's claim for interest on interest must be denied.

Plaintiff is entitled to recover $25,834.-52, for which a judgment in his favor will be entered.