## DUISBERG v. UNITED STATES.

### No. 48727.

United States Court of Claims.

June 5, 1950.

Jacob J. Rosenblum, New York City, Eugene L. Garey and Abraham Hornstein, New York City, on the brief, for plaintiff.

Kendall M. Barnes, Washington, D. C., H. G. Morison, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges.

HOWELL, Judge.

Plaintiff sues to recover just compensation for 1,975 shares of the capital stock of General Dyestuff Corporation vested by the Alien Property Custodian on June 30, 1942.

The petition alleges that plaintiff was the sole owner and holder of record on June 30, 1942, of 1,975 shares of the capital stock of General Dyestuff Corporation, that on June 30, 1942, the Alien Property Custodian executed Vesting Order No. 33 by the terms of which he vested in himself the ownership of these shares of stock.

On May 29, 1943, the plaintiff filed a claim with the Office of the Alien Property Custodian under § 9(a) of the Trading With the Enemy Act, 50 U.S.C.A.Appendix, § 9(a), for the return of said 1,975 Dyestuff shares, but no request for a hearing on the claim was made. On November 7, 1947, an amended notice of claim was properly filed in which a hearing on said claim was requested. No hearing has ever been held on

said amended notice of claim and plaintiff alleges that no action has been taken thereon by the Office of Alien Property Custodian of the Department of Justice.

Also on November 7, 1947, plaintiff filed a claim under and pursuant to § 32(a) of the Trading With the Enemy Act, 50 U.S.C.A. Appendix, § 32(a), seeking the return of the Dyestuff shares, but no hearing thereon has ever been had and plaintiff alleges that no action has been taken thereon by said office.

On June 5, 1943, plaintiff commenced an action in the United States District Court for the District of New Jersey, against the Alien Property Custodian, under and pursuant to § 9(a) of the Trading With the Enemy Act, seeking the return to plaintiff of the 1,975 Dyestuff shares. On March 18, 1944, the Alien Property Custodian filed his answer and after various motions addressed to the pleadings and before the date set for commencement of the trial, plaintiff, on June 20, 1944, moved for a voluntary nonsuit. Plaintiff's motion was denied and, on motion of the Alien Property Custodian, the court, without any trial upon the merits, ordered that plaintiff's action be dismissed with prejudice, and, on June 22, 1944, entered an order to that effect. Plaintiff thereupon took an appeal to the Circuit Court of Appeals for the Third Circuit which affirmed the order. Duisberg v. Markham, 149 F.2d 812. An application by plaintiff for a writ of certiorari was denied by the Supreme Court of the United States, 326 U.S. 759, 66 S.Ct. 98, 90 L.Ed. 456.

The defendant has filed a motion to dismiss plaintiff's petition in this court upon three grounds:

(1) This court does not have jurisdiction of the cause of action stated in the petition;

(2) The petition fails to state a cause of action, and

(3) Plaintiff's claim is finally concluded and barred by the proceedings previously had in the District Court in New Jersey, later affirmed by the Circuit Court of Appeals and certiorari having been denied by the Supreme Court.

The basic statute involved is the Trading With the Enemy Act of 1917, 40 Stat. 411, 50 U.S.C.A.Appendix, §§ 1–31. This statute was adopted shortly after our entrance into World War I and as amended during and after that war governed the activities of the Alien Property Custodian during World War II. No relevant amendments to the statute have been recently made.

Paragraph 4 of Section 7(c) of the Act provides as follows: "The sole relief and remedy of any person having any claim to any money or other property heretofore or hereafter conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or required so to be, or seized by him shall be that provided by the terms of this Act,, and in the event of sale or other disposition of such property by the Alien Property Custodian, shall be limited to and enforced against the net proceeds received therefrom and held by the Alien Property Custodian or by the Treasurer of the United States."

Section 9(a) of the Act deals with the preservation of claims to property acquired by the Alien Property Custodian, and with the institution of suits to recover such property in material part, as follows: "Any person not an enemy or ally of enemy claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder * * * may institute a suit in equity in the Supreme Court of the District of Columbia or in the district court of the United States for the district in which such claimant resides, * * * to establish the interest, right, title, or debt so claimed, and if so established the court shall order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian * * *."

We first consider the question of the jurisdiction of this court to hear and determine the cause of action alleged in the petition.

This court had occasion to consider the right of a Swiss citizen to claim just com-

pensation for certain shares of stock sold by the Alien Property Custodian in Escher v. United States, 68 Ct.Cl. 473, certiorari denied 281 U.S. 752, 50 S.Ct. 353, 74 L.Ed. 1163. Plaintiff in that case brought an action under Section 9 of the Trading With the Enemy Act and recovered the proceeds arising from the sale of the stock as provided in Section 7. Claiming that the stock had a value on the date of its seizure some 40 percent above the price at which it had been sold, plaintiff then brought suit in this court for the excess. The court recognized and stated the basic question involved as follows: "In determining the question presented by the demurrer, there are two principles that must be kept in mind: First, that this court has only such jurisdiction as is conferred upon it by statute; second, that suits against the United States can only be brought in such manner and under such terms and conditions as are provided by statute. * * *"

After examining the provisions of Sections 7 and 9 of the Trading With the Enemy Act in the light of the plaintiff's contentions the court dismissed the petition and said: " * * * When Congress provided the place and manner of commencing a suit on behalf of a person whose property had been seized and who was not an enemy or any ally of an enemy, the effect was to exclude all other jurisdictions. 'Where a statute creates a right and provides a special remedy, that remedy is exclusive.' United States v. Babcock, 250 U.S. 328, 331 [39 S.Ct. 464, 63 L.Ed. 1011]. And this principle is especially applicable where Congress has conferred jurisdiction upon some court for the purpose of suit against the United States for compensation. United States v. Pfitsch, 256 U.S. 547, 552 [41 S.Ct. 569, 65 L.Ed. 1084]. * * * this court has no jurisdiction to consider the action brought, because Congress has provided another and a different remedy."

In North German Lloyd v. United States, 61 Ct.Cl. 138, certiorari denied 270 U.S. 645, 46 S.Ct. 347, 70 L.Ed. 778, plaintiff, an enemy corporation, sought just compensation for property seized during World War I

under a statute which provided that "the United States shall make just compensation therefor to be determined by the President." The President had determined such compensation and had caused it to be paid to the Alien Property Custodian. This court dismissed the petition saying, 61 Ct.Cl. at page 143: " * * * Sections 9 and 17 of the Trading With the Enemy Act (40 Stat. 411, 419, 425) give to the district courts of the United States jurisdiction of suits brought under this Act. The money to which the plaintiff lays claim is in the custody of the Alien Property Custodian, and whether rightfully or wrongfully so this court has no jurisdiction in a case which comes, as this does, under the provisions of the Trading With the Enemy Act. The court therefore sustains the demurrer * * *."

In Castell v. United States, 14 F.Supp. 654, 83 Ct.Cl. 222, no question of the jurisdiction of this court was involved. Plaintiff, as executor of the estate of a loyal American citizen who died in Germany where she had resided continuously since 1903, brought suit to recover certain interest on income tax refunds resulting from an overpayment of income taxes made for deceased's account by the Alien Property Custodian during the time he held certain property as a result of seizure under the Trading With the Enemy Act. This court held that Section 18(e) of the Settlement of War Claims Act of 1928, 45 Stat. 254, did not prohibit the payment of the interest in controversy to a loyal American citizen.

From these decisions of this court, especially the two first above mentioned, plaintiff urges that because he is a loyal American citizen he is entitled under the Tucker Act[1] to sue for just compensation for the taking of his property under the Fifth Amendment to the Constitution regardless of the provisions of Sections 7 and 9 of the Trading With the Enemy Act. It is true that North German Lloyd v. United States, supra, involved an enemy corporation of Germany and Escher v. United States, supra, involved a citizen of

1. See 1948 Revised Judicial Code, 28 U.S.C.A. §§ 1346, 1402, 1491, 2401, 2501 et seq.

Switzerland, but in the consideration of the existence of jurisdiction in this court to hear and determine suits under the relevant sections of the statute involved we are of the opinion that such distinction is not relevant for the reason that Congress plainly did not make it so when it accorded the privilege to sue the Government. In Lynch v. United States, 292 U.S. 571, 581–582, 54 S.Ct. 840, 844, 78 L.Ed. 1434, the court said: " * * * For consent to sue the United States is a privilege accorded, not the grant of a property right protected by the Fifth Amendment. The consent may be withdrawn, although given after much deliberation and for a pecuniary consideration. * * * The sovereign's immunity from suit exists whatever the character of the proceeding or the source of the right sought to be enforced. It applies alike to causes of action arising under acts of Congress, * * * and to those arising from some violation of rights conferred upon the citizen by the Constitution. * * * For immunity from suit is an attribute of sovereignty which may not be bartered away."

■ Section 9(a) grants the privilege of suit to "any person *not an enemy or ally of enemy * * *"* and within this designation both citizens and noncitizens are embraced. Therefore, we do not think the fact that plaintiff is a loyal American citizen affects the jurisdiction of this court to hear his suit in any way whatever.

The language of Section 7(c) is no less uncertain in setting forth the relief to which any person not an enemy or ally of enemy is entitled. "The *sole relief* and *remedy* of any person * * * shall be that provided by the terms of this Act * * *." [Italics supplied.] This relief is, by the terms of Section 9(a) of the act, "a suit in equity in the Supreme Court of the District of Columbia or in the district court of the United States for the district in which such claimant resides * * * to establish the interest, right, title, or debt so claimed, and if so established, the court shall order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian * * *."

■ The plaintiff does not allege that the relief so provided is inadequate, but his arguments are directed to the proposition that such language should not be construed as withdrawing or curtailing the privilege of suit against the government to enforce obligations arising under the Constitution. However, it is apparent that the relief so provided is adequate except in the case where property vested by the Alien Property Custodian has diminished in value subsequent to its taking or where such property has been sold leaving proceeds less than its fair value at the time of taking. But even in such cases, Congress has the power not only to accord the privilege of suit against the Government in whatever manner or form it chooses, but to withdraw it as well and this applies alike to causes of action arising under an Act of Congress and to those arising under the Constitution. Lynch v. United States, supra.

On May 18, 1946, in Uebersee Finanz-Korporation, A. G., v. Markham, 81 U.S. App.D.C. 284, 158 F.2d 313, 314, before the Court of Appeals for the District of Columbia, the Alien Property Custodian took the position that a 1941 amendment to Section 5(b) of the Trading With the Enemy Act made vesting absolute and not subject to attack under Section 9(a) and that claimant's remedy would be to such just compensation in the Court of Claims. This contention was rejected, the court saying: " * * * But that suggestion conflicts with § .7(c) of the Act, which provides—'The sole relief and remedy of any person having any claim to any money or other property * * * transferred * * * to the Alien Property Custodian * * * shall be that provided by the terms of this Act,' i. e., § 9(a). Thus appellant's right of recovery, if it has any, is limited by statutory terms to a suit under § 9(a), for only to that extent and in that manner has the United States consented to be sued." [Citing Pflueger v. United States, 73 App.D.C. 364, 121 F.2d 732, and Sigg-Fehr v. White, 52 App.D.C. 215, 285 F. 949.]

The Supreme Court of the United States affirmed the decision sub nomine Clark v. Uebersee Finanz-Korporation, A. G., 332 U.S. 480, at page 487, 68 S.Ct. 174, at page

177, 92 L.Ed. 88, and in the course of the opinion noted that "7(c) makes the remedy under the Act the only one Congress has granted a claimant."

In the instant case, as well as in certain other cases, Castell v. United States, D.C., 20 F.Supp. 175, reversed 2 Cir., 1938, 98 F. 2d 88; Draeger Shipping Co., Inc., v. Crowley, D.C.S.D. of N.Y.1943, 49 F.Supp. 215; Swiss Bank Corp. v. Clark, D.C.S.D. N.Y.1947, 73 F.Supp. 896, antedating the decision of the Supreme Court in Clark v. Uebersee Finanz-Korporation, supra, which was decided December 8, 1947, the Government took the position that plaintiffs had a remedy under the Tucker Act and thus the Court of Claims had jurisdiction of a suit for just compensation. In its brief submitted to the District Court for the District of New Jersey, defendant set forth this position and maintained it in its oral argument before the Circuit Court of Appeals which affirmed the dismissal action of the lower court in a per curiam opinion handed down May 25, 1944.

It appears, however, that the Government consistently maintained its position that this court did have jurisdiction until that argument was rejected in the Uebersee case, supra. There was no inconsistency of position until the Supreme Court had spoken. The statements made before the Circuit Court of Appeals for the third Circuit seem to have been made before the Supreme Court handed down its Uebersee decision.

We have noted the expressions of the Supreme Court in Becker Steel Co. v. Cummings, 1935, 296 U.S. 74, at pages 79–81, 56 S.Ct. 15, 80 L.Ed. 54, the dissenting opinion of the Circuit Court of Appeals for the District of Columbia in Uebersee Finanz-Korporation, A. G., v. Markham, supra, 158 F.2d at page 316, as well as certain dictum in the course of the opinion of the Supreme Court in Clark v. Uebersee, supra, 332 U.S. at pages 487–488, 68 S.Ct. at page 177, 92 L.Ed. 88, but under the doctrine of the Lynch case, supra, and the circumstances of the instant case where, so far as appears, the plaintiff had a completely adequate remedy under Section 9(a) of the Act, we feel constrained to grant the Government's motion. Plaintiff's petition is therefore dismissed.

Having concluded that this court lacks jurisdiction to entertain this suit, it is not necessary for us to consider the doctrines of res judicata and election of remedies which the parties ably presented in their briefs.

JONES, Chief Judge, and MADDEN, WHITAKER, and LITTLETON, Judges, concur.