Trading with the Enemy Act; property of American citizen vested by the Alien Property Custodian; congressional reference — equitable claim. — The case comes before the court pursuant to H. Res. 128 referring H.R. 2692, 86th Cong., 1st Sess., to the court for a report as to whether plaintiff has a legal or equitable claim against the United States and the amount, if any, legally or equitably due from the United States, the statute of limitations, the plea of res judicata, and the previous history of this case in the court to the contrary notwithstanding.* Plaintiff’s claim Was for the value of property vested under the provisions of the Trading with the Enemy Act, 50 U.S.C. §§ 1 et seq. On the basis of a stipulation of the parties filed on June 7,1961, and a memorandum report by Trial Commissioner Marion T. Bennett filed June 8,1961, the court, on June 9,1961, issued an order reporting to Congress that plaintiff has an equitable claim against the United States in the sum of $827,850 for which he should be compensated in full settlement of all his claims against the United States on account of matters set forth in his petition. The following stipulation of the parties was made a part of the order of the court:
(1) Walter H. Duisberg, plaintiff herein, was bom in Elberfeld, Germany, on August 27, 1892, and came to the United States in 1927. He was naturalized a United States citizen on May 1, 1933. He is the son of Carl Duisberg, deceased, one of the founders of I.G. *856 Farbenindustrie A.G., who was a member of the Farben Board of Supervisors until his death in 1935.
(2) General Dyestuff Corporation (hereinafter GDC) was incorporated in New York State on March 28,1925. It was the cooperative creation of three chemical and dyestuffs sales firms in the United States: H. A. Metz & Co., Kuttroff, Pickhardt & Co., and Grasselli Dyestuff Corporation. After the merger GDC became the exclusive distributor in the United States for the dyestuff products of those German manufacturers who later combined, on December 2,1925, to form the I.G. Farben organization. After the creation of Farben, GDC then became the exclusive distributor in the United States for the dyestuff products of I.G. Farben and continued as such until 1936 when it became non-exclusive distributor.
When I.G. Farben, on April 24, 1929, created American I.G. (hereinafter AIG), the forerunner of General Aniline & Film Corporation (hereinafter GAF), GDC 'became not only the exclusive distributor for Farben. but also the exclusive distributor of AIG; and when AIG became GAF, GDC became the sole dyestuffs distributor for GAF. AIG and later GAF acquired from Farben, technical assistance, know-how, and the right to the use in the United States of the Farben processes for the manufacture of dyestuffs and related products.
(3) Prior to the formation of GDC, the three founding companies, H. A. Metz & Co., Kuttroff, Pickhardt & Co., and Grasselli Dyestuff Corporation, imported the bulk of their chemicals and dyestuffs from Germany. A majority of the stock of H. A. Metz & Co. was owned by one Herman Metz whose firm had been the sole American sales representative for Farbwerke Meister Lucius & Bruning, Hoechst, one of the large German dye and chemical manufacturers which merged into the I.G. Farben combine.
Kuttroff, Pickhardt & Co. was a New York corporation organized on October 26, 1917. The company was engaged in the importation and sale of chemicals and allied products manufactured by the Badische Anilin & Soda Fabrik of Ludwigshafen, Germany, also one of the companies which was merged into the I.G. Farben combine. Adolph Kuttroff and Carl Pickhardt, the founders of the firm, had had a long business association with Badische.
The Grasselli Dyestuff Corporation was organized in Delaware in 1924. Its assets were contributed jointly by the Grasselli Chemical Corporation of Ohio and the *857 firm of Farben Fabriken vorm. Friedricli Bayer of Germany. The Grasselli Chemical Corporation which supplied the plants and equipment for Grasselli Dyestuff Corporation had acquired certain German dye and chemical holdings in the United States after World War I. The Bayer Company, which was later merged into the I.G. Farben combine, contributed to Grasselli Dyestuff Corporation inventories, patents and know-how. At the time of its creation, Grasselli Dyestuff Corporation was controlled 50-50 by Grasselli Chemical and Bayer. After the formation of the I.G. Farben combine, the Grasselli Dyestuff stock was owned 50% by I.G. Farben and 50% by Grasselli Chemical Corporation.
(4) GDC was incorporated in the State of New York on March 28, 1925, by H. A. Metz and two qualifying subscribers, A. C. Vandiver and A. A. Van Fine, each holding one share. At the first meeting of the incorpora-tors the qualifying holders assigned their shares to Metz. The certificate of incorporation authorized the issuance of 6,000 shares of no par value stock. Those 6,000 shares were thereafter held equally — 2,000 shares each — by representatives of each of the three founding companies, i.e., H. A. Metz, Grasselli Dyestuff Corporation, and Kuttroff, Pickhardt & Co.
At a special stockholders’ meeting held on December 9, 1925, the capital stock of GDC was increased to $1,000,000, divided into 10,000 shares of stock having a par value of $100 each.
From 1928 on, majority stock control of the corporation was held successively by Herman Metz (between 1928 and 1931), by D. A. Schmitz (between 1931 and July 1939,) brother of Hermann Schmitz, the chief executive of I.G. Farben; and by E. K. Halbach (from August 1939 until June 1942, vesting date of the stock).
(5) From the date of its incorporation until the date of vesting, all of the outstanding stock in GDC was held by its registered owners subject to an option agreement which restricted the sale of the stock on the open market. From 1926 until April 1933, the options on GDC stock ran directly to I.G. Far'benindustrie A.G. of Germany. Under the terms of this option, Farben had the right to purchase these shares at a price of $100 per share plus interest at the rate of 6% from date of agreement less dividends received. From April 1933 until 1937, the options on GDC stock ran to The Marion Company, a holding company incorporated in the State of Delaware, by D. A. Schmitz, for the purpose of holding options on the stock of GDC and of other *858 American companies. From January 1937 until July 1939, options on the GDC stock were bold by Chemnyco, Inc., a New York corporation organized for the purpose of servicing I.G. Farben with respect to economic and technical data. Both of these companies had controlling personnel Who were friends or associates of leading men of I.G. Farben.
From July 1939 until July 1941, all of the outstanding stock of GDC held by the registered owners was subject to the terms of a “stockholders agreement”, with GDC. This agreement provided, in pertinent part, that no stockholder shall sell his GDC stock without first giving the company (GDC) a 90 day option to purchase said stock at a price of $100 per share plus 6% from the date of payment of the last dividend. On August 2, 1940 and July 8, 1941, new agreements were entered into by and between the registered stockholders and the corporation. Each of the said agreements contained a similar provision limiting the sale of stock by a stockholder and granting an option to the company to purchase said stock at the agreed price of $100 per share plus 6% from the date of payment of the last dividend.
(6) The Marion Company which held the GDC stock options from 1933 until 1937 was organized under the laws of the State of Delaware on November 25, 1931. It was organized by the law firm of Briesen & Schrenk, then general attorneys for I.G. Farben in the United States, pursuant to instructions sent from Switzerland by D. A. Schmitz, brother of Hermann Schmitz, the chief executive of I.G. Farben. During the years 1933 through 1937 — the period during which Marion held the stockholders’ options on GDC stock — all of the outstanding stock of The Marion Company was registered in the names of D. A. Schmitz (brother of Hermann Schmitz), William H. vom Bath (secretary of GAF), and Walter H. Duisberg, the plaintiff herein. However, as of June 7, 1938 Chemnyco, Inc. had become the sole stockholder of The Marion Company and the latter was dissolved on or about June 26? 1939.
(7) Chemnyco, Inc. which held the GDC stock options from January 1937 through July 1939, was incorporated in New York State on October 23, 1930 as the “U.S. Transatlantic Corp.” On April 17, 1933 its name was changed to Chemnyco, Inc. It was organized by Dr. Wilfrid Greif, formerly an official of I.G. Farben who at that time was also vice president and director of AIG. The function of Chemnyco, Inc. was to service I.G. Far-ben in gathering and transmitting to it in Germany *859 economic and technical data, and as a collection agency for royalties and other payments due I.G. Farben. Substantially all of its revenue came from Farben and GAF.
During the years 1937 through 1939 — the period during which Chemnyco, Inc. held the stockholders’ options on GDC stock- — Chemnyco itself was controlled by D. A. Schmitz (brother of Hermann Schmitz, chief executive and general manager of I.G. Farben) as majority stockholder. During this period, the stock of Chemnyco, Inc. was optioned to The Marion Company and held in escrow by Briesen and von Schrenk.
(8) From the date of its formation in 1925 until 1939, all the issued stock certificates in GDC were in the actual physical possession of Briesen & Schrenk, general attorneys for Marion and Chemnyco, who held the said certificates as depositary for the various registered owners. In 1939, the stock was distributed to the several registered owners.
(9) Walter H. Duisberg, plaintiff herein, first became a stockholder in GDC on June 8,1938 when he purchased 100 shares from The Marion Company at a price of $100 per share. The Marion Company had acquired these shares from Adolf Kuttroff. Simultaneously with this purchase Duisberg gave Chemnyco, Inc. an option to purchase said shares at the same price which Duisberg had paid for them — $100 per share. Duisberg endorsed his stock certificate in blank and deposited it with Brie-sen & von Schrenk. Payment for these shares was made by cheek in the amount of $10,000 drawn by Duisberg on his personal funds. At the time of this purchase the book value of the shares was approximately $440 per share or $44,000 for the lot of 100 shares.
(10) On May 3,1939, Duisberg acquired an additional 100 shares of GDC from Chemnyco, Inc. at a price of $100 per share, which the latter had acquired from the estate of Carl Pickhardt. These shares were also held by Duisberg subject to an option running in favor of Chemnyco, Inc., which gave the latter the right to purchase said stock at a price of $100 per share. The stock certificate was endorsed in blank by Duisberg and deposited with Briesen & von Schrenk. Payment for this block of stock was made by check in the amount of $10,000 drawn by Duisberg upon his personal funds. At the time of this second purchase the book value of the stock was approximately $540 per share or $54,000 for the lot of 100 shares.
(11) On September 22,1939, Duisberg acquired a third block of 900 GDC shares, again at a price of $100 per *860 share. These shares were part of a block of treasury stock held 'by GDC which had previously been held by Messrs. D. A. Schmitz, Pickhardt and Hutz. As with the other stock purchased by Duisberg, this block of 900 shares was also made subject to an option, the option agreement running in favor of GDC, giving- the latter the right to purchase the said shares at a price of $100 per share. Duisberg paid for these shares with two checks totaling $90,000 drawn upon his personal funds. At the time this purchase was made, the book value of the stock was approximately $540 per share or a total of $486,000 for the lot of 900 shares.
(12) On January 3, 1940, Duisberg received a 50% stock dividend amounting to 550 shares, and on May 12, 1940 he received a second 50% stock dividend which amounted to 825 shares. As a result, Duisberg’s total holdings of DGC stock as of May 12, 1940 amounted to 2475 shares.
(13) On or about August 25, 1941, Duisberg sold to GDC 500 shares of his stock at the option price of $100 per share which left Duisberg holding a total of 1975 shares of GDC stock. At the time Duisberg made this sale the book value of the stock was approximately $400 per share.
(14) On December 29, 1941, Duisberg offered to sell his remaining 1975 shares to GDC at the option price of $100 per share, contingent upon the granting of a U.S. Treasury Department license permitting the sale. By resolution of its Board of Directors, GDC accepted this offer and made application for a Treasury license on February 11, 1942. The application was denied by the Treasury Department: The book value of the shares at this time was approximately $400 per share.
(15) Duisberg- was at no time an officer of GDC. He did however serve as a director of the company for the period 1938 through September 1939 and functioned as a patent consultant until the year 1941. He was one of Farben’s patent attorneys in the United States from 1926 to 1939. From 1933 to sometime in 1938 he was proxy holder for Farben’s share interest in Magnesium Development Corporation and Pen-Chlor, Inc. He was director, vice president and patent attorney for Chem-nyco, Inc. from 1931 to 1938. He was connected with AIG and GAF from April 26, 1929 to July 28, 1939, holding, in that period, such positions as director, executive committee member, treasurer, vice president, 1st vice president, and patent attorney; and from 1930 to 1939 he was a director and patent attorney for General
*861 855 ORDERS 861 Aniline Works (GAW), (formerly Grasselli Corporation) which merged with GAF, and he was a director of GDC from April 1938 to September 22, 1939, and patent attorney to GDC until 1941. He was a stockholder of GDC at the time of vesting in 1942. (16) From April 26, 1929 until July 28, 1939 Duis-berg was a director of GAF. From February 27, 1931 until July 28,1939 he was also a member of the Executive Committee. From June 14, 1935 until July 28, 1939 he served as company treasurer. From June 14, 1935 until April 23, 1936 he was a vice president of the company, and from April 23, 1936 until July 28, 1939 he was 1st vice president. Duisberg resigned as 1st vice president of GAF on July 28, 1939 and was granted two (2) years severance pay at $55,000 per year from July 1, 1939 to June 30, 1941, a total of $110,000 with the proviso that for a period of two years Duisberg refrain from working for any firm engaged in the manufacture of products competing with those produced by On September 22,1939, Duisberg tendered his resignation as a director of GDC — his resignation was accepted and made effective as of that date. (17) By Vesting Order No. 33 issued on June 30, 1942, all of the outstanding stock of GDC, including stock certificates numbered 101, 102, and 103 registered in the name of Walter H. Duisberg, were vested by the Alien Property Custodian. (18) On June 3, 1943, Duisberg filed suit in the United States District Court for the District of New Jersey under Section 9(a) of the Trading with the Enemy Act seeking to recover the value of the shares vested under Vesting Order No. 33. On June 22, 1944, Duisberg’s suit was dismissed with prejudice for failure to prosecute. Duisberg has consistently argued that the failure to prosecute was based on (a) the assertion of his counsel that said counsel was unready to try the case ; and (b) advice, and his understanding based on the then state of the law, that alternative remedies in the Court of Claims and in the Office of Alien Property were open to him. Actions brought by Duisberg in the Court of Claims and before the Office of Alien Property were each dismissed, on the grounds, respectively, that the Court of Claims had no jurisdiction, and that the matter when brought before the Office of Alien Property was res judicata. His attempts to reopen the District Court judgment were unsuccessful.
*862 The evidence adduced in support of these findings has not previously been examined by any court.
(19) The suits or claims of all stockholders of GDC, other than the plaintiff Duisberg, were terminated prior to 1953 by payment to each of the stockholders at the option rate for their shares computed from the date of vesting to the date of payment, except for claim of the Estate of Armin St. George, deceased, which was compensated at a higher rate.
(20) In 1953 all of the outstanding capital stock of GDC amounting to 8678 shares was acquired by GAF in exchange for 65,085 shares of GAF Class A common stock, and thereafter GDC ceased to exist as an independent operating company.
CONCLUSION OE LAW
That Walter H. Duisberg, plaintiff herein, has an equitable claim against the United States which is adequately compensated by the payment to him of $327,-850, calculated at $166 per share, which is the option price for the shares computed from 1942 the vesting date, to 1953 the date when GDC terminated its independent existence.
It is further stipulated and agreed that
(a) Nothing in this stipulation or agreement binds the Internal Eevenue Service in its consideration or treatment of any tax liability resulting from any payment that may be made hereunder.
(b) If Congress should accept this report and should appropriate the sum of $327,850 to Duisberg, then Duis-berg, upon the payment thereof, releases the United States and the Attorney General of the United States, as successor to the Alien Property Custodian from any and all claims he may have against them, or either of them, on account of the matters set forth in his petition in this action.
(c) This stipulation is made for the purpose of enabling the Court to make findings of fact and a conclusion of law in this case, and to report the same to Congress, in the event the Court should accept this stipulation in its entirety. However, if this stipulation is rejected in whole or in part by the Court, it is agreed that the entire stipulation shall then be void and of no effect whatsoever.

 In Duisberg v. United States, No. 48727, decided June 5, 1950, 116 Ct. Cl. 861, cert. denied 340 U.S. 890, the court dismissed the petition on the ground that the court lacked jurisdiction of the claim.