BECKER STEEL COMPANY OF AMERICA *v.* CUMMINGS, ATTORNEY GENERAL, ET AL.

No. 13. Argued October 17, 1935.—Decided November 11, 1935.

*Mr. E. Crosby Kindleberger* for petitioner.

*Assistant Attorney General Dickinson,* with whom *Solicitor General Reed, Assistant Attorney General MacLean,* and *Messrs. Wendell Berge* and *Paul A. Sweeney* were on the brief, for respondents.

MR. JUSTICE STONE delivered the opinion of the Court.

This is a suit against the Attorney General, as Alien Property Custodian, and the Treasurer of the United States, brought in the District Court for Southern New York under § 9 (a) of the Trading with the Enemy Act,

40 Stat. 411, as amended, 41 Stat. 977, 42 Stat. 1511,[1] to recover a balance of the proceeds of sale of certain shares of stock seized and sold by the Alien Property Custodian. An earlier suit brought for the same purpose was dismissed on the ground that the attempted revivor against the then Alien Property Custodian and Treasurer was too late. 66 F. (2d) 497; cf. *Fix* v. *Philadelphia Barge Co.,* 290 U. S. 530.

The complaint alleges, among other things not now material, that the petitioner, owner of the shares seized,

---

[1] Relevant portions of the Trading with the Enemy Act are:

"Sec. 7 (c) . . . The sole relief and remedy of any person having any claim to any money or other property heretofore or hereafter conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or required so to be, or seized by him shall be that provided by the terms of this Act, and in the event of sale or other disposition of such property by the Alien Property Custodian, shall be limited to and enforced against the net proceeds received therefrom and held by the Alien Property Custodian or by the Treasurer of the United States." [40 Stat. 1020.]

"Sec. 9 (a). That any person not an enemy or ally of enemy claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States, or to whom any debt may be owing from an enemy or ally of enemy whose property or any part thereof shall have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States may file with the said Custodian a notice of his claim under oath and in such form and containing such particulars as the said custodian shall require; and the President, if application is made therefor by the claimant, may order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian or by the Treasurer of the United States, or of the interest therein to which the President shall determine said claimant is entitled: *Provided,* That no such order by the President shall bar any person from the prosecution of any suit at law or in equity against the claimant to establish any right, title, or interest which he may have in such money or

was not an enemy alien; that the Alien Property Custodian, predecessor in office of the Attorney General now acting in that capacity, sold the stock for $20,000, the balance of which, after paying expenses of the sale amounting to $3,887.84, he turned over to the petitioner. Judgment is demanded for the amount paid out as expenses.

The district court granted a motion to dismiss the bill of complaint for want of jurisdiction. 10 F. Supp. 343. Its order was affirmed by the Court of Appeals for the Second Circuit on the opinion of the district court. 75 F. (2d) 1005. This Court granted certiorari because of the nature and importance of the question involved and to resolve an alleged conflict of the decision below with that of the Court of Appeals for the Ninth Circuit in *Vowinckel* v. *Sutherland,* 24 F. (2d) 196.

---

other property. If the President shall not so order within sixty days after the filing of such application or if the claimant shall have filed the notice as above required and shall have made no application to the President, said claimant may institute a suit in equity in the Supreme Court of the District of Columbia or in the district court of the United States for the district in which such claimant resides, or, if a corporation, where it has its principal place of business (to which suit the Alien Property Custodian or the Treasurer of the United States, as the case may be, shall be made a party defendant), to establish the interest, right, title, or debt so claimed, and if so established the court shall order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian or by the Treasurer of the United States or the interest therein to which the court shall determine said claimant is entitled. If suit shall be so instituted, then such money or property shall be retained in the custody of the Alien Property Custodian, or in the Treasury of the United States, as provided in this Act, and until any final judgment or decree which shall be entered in favor of the claimant shall be fully satisfied by payment or conveyance, transfer, assignment, or delivery by the defendant, or by the Alien Property Custodian, or Treasurer of the United States on order of the court, or until final judgment or decree shall be entered against the claimant or suit otherwise terminated." [42 Stat. 1511.]

The trial court held, as is conceded here, that the suit brought against officers of the government in their official capacities is in substance a suit against the United States authorized, if at all, by § 9 (a) of the Trading with the Enemy Act. See *Banco Mexicano* v. *Deutsche Bank,* 263 U. S. 591; *Henkels* v. *Sutherland,* 271 U. S. 298. That section provides that the non-enemy claimant " may institute a suit in equity . . . in the district court . . . to establish the interest, right, title . . . so claimed," and that " if so established the court shall order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian or by the Treasurer of the United States." These provisions the district court construed as granting the privilege of suit to a non-enemy only when the money or property demanded is " held " by the Alien Property Custodian or the Treasurer of the United States at the time of suit, and concluded that it lacked jurisdiction to entertain the suit since the money demanded had been disbursed before suit.

The Government urges that these clauses must be read with the requirement of § 9 (a) that after suit instituted the money or property claimed shall be retained in the custody of the Alien Property Custodian or of the Treasurer of the United States until final judgment, and also with the provision in § 7 (c) that the remedy given by the act " in the event of sale or other disposition of such property by the Alien Property Custodian shall be limited to and enforced against the net proceeds received therefrom and held by the Alien Property Custodian or by the Treasurer."

The question thus presented is not one of jurisdiction of the district court in the strict sense of its power or authority as a federal court to decide whether the suit would lie. Cf. *Sperry Gyroscope Co.* v. *Arma Engineering Co.,* 271 U. S. 232; *Smyth* v. *Asphalt Belt Ry. Co.,* 267

U. S. 326; *Timken Co.* v. *Pennsylvania R. Co.*, 274 U. S. 181, 185; *Binderup* v. *Pathe Exchange*, 263 U. S. 291, 305. It had power to determine whether the suit was one permitted by the statute and the only question presented now is whether its decision is erroneous.

Section 7 of the Trading with the Enemy Act conferred on the Alien Property Custodian authority summarily to seize property upon his determination that it was enemy owned, and such a seizure was lawful even though the determination were erroneous. *Central Union Trust Co.* v. *Garvan,* 254 U. S. 554; *Stoehr* v. *Wallace,* 255 U. S. 239; *Commercial Trust Co.* v. *Miller,* 262 U. S. 51. But in thus authorizing the seizure of property as a war measure Congress did not attempt the confiscation of the property of citizens or alien friends. See *Henkels* v. *Sutherland, supra,* 301. Instead by § 9 (a) it gave to the non-enemy owner the right to maintain a suit for the recovery of the seized property or its proceeds, and at the same time, by the all-inclusive language of § 7 (c) it denied to him any other remedy.

The seizure and detention which the statute commands and the denial of any remedy except that afforded by § 9 (a) would be of doubtful constitutionality if the remedy given were inadequate to secure to the non-enemy owner either the return of his property or compensation for it. See *Henkels* v. *Sutherland, supra; Central Union Trust Co.* v. *Garvan, supra,* 566, 569; *Stoehr* v. *Wallace, supra,* 246. Plainly inadequate would be a remedy which could be availed of only while the Custodian or Treasurer continued to retain possession of the seized property or its proceeds, and which would be lost whenever he disposed of the property and proceeds, whether lawfully or not. In determining whether the remedy given is thus restricted it must be presumed that Congress intended that it should be constitutionally sufficient. The implication that by the appropriation of private property to public

use the United States undertakes to make just compensation for it, see *United States* v. *Lynah,* 188 U. S. 445, 471; *Jacobs* v. *United States,* 290 U. S. 13; *Perry* v. *United States,* 294 U. S. 330; *Brooks-Scanlon Corp.* v. *United States,* 265 U. S. 106, must likewise enter into the construction of a statute giving to a non-enemy a remedy for the seizure of his property as a war measure. Only compelling language in the congressional enactment will be construed as withdrawing or curtailing the privilege of suit against the government granted in recognition of an obligation imposed by the Constitution. See *Lynch* v. *United States,* 292 U. S. 571, 586, 587; *Russian Volunteer Fleet* v. *United States,* 282 U. S. 481, 489. Hence § 9 (a) must be broadly construed to give effect to its remedial purpose, see *Miller* v. *Robertson,* 266 U. S. 243, 248; *Behn, Meyer & Co.* v. *Miller,* 266 U. S. 457, 471, 472.

In the present state of the record it is unnecessary to inquire whether the effect of the act is to sanction in every case the sale of the property of a non-enemy giving him recourse only to the proceeds of sale. See *Sielcken-Schwarz* v. *American Factors,* 60 F. (2d) 43, 44. That question was not raised or considered below. The issue now presented is much narrower, whether the failure of the Custodian to retain possession of the seized property or its proceeds precludes all inquiry as to the propriety of the disposition which he has made of them. Such, we think, is not the effect of the provisions in §§ 7 and 9, construed in the light of constitutional obligations which we must assume Congress did not intend to ignore. Section 9 (a) is specific in permitting the non-enemy claimant to institute a suit to establish the interest, right or title claimed. " If so established " the court in terms is directed to order the satisfaction of the claim from property " held " by the Custodian or Treasurer. But these words do not deny the right to establish the claim or to

enter judgment upon it when established, even though the property is no longer held by the Custodian. Directions that the money or property be retained and used for satisfying the decree in a pending suit are not the equivalent of a command that the suit be dismissed if the property is not so retained. If they were we should be forced to the conclusion, although the court below did not go so far, that the claim could be defeated by the waste or dissipation of the seized property by the Custodian at any time before judgment, after suit brought, as well as before.

Nor does the provision in § 7 that the remedy in the event of sale is to be limited to the net proceeds of sale "received therefrom and held" by the Custodian preclude inquiry whether amounts expended were lawfully charged against the gross proceeds. *Escher* v. *Woods*, 281 U. S. 379. "Net proceeds of sale" thus means no more than gross proceeds less charges which may be rightly deducted and we think that the direction that the remedy is to be limited to net proceeds "held" by the Custodian must be taken, not in the narrow and restricted sense as indicating only the proceeds retained by him at the precise moment of entering the decree, but as signifying proceeds held by him at any time and not lawfully disbursed. Such a construction does no violence to the language of the act and conforms to and is supported by its dominant purpose, often recognized by this Court, to give to citizens and alien friends an adequate remedy for invasions of their property rights in the exercise of the war powers of the Government. Any other construction by denying such a remedy would raise grave doubts of the constitutionality of the statute as applied to non-enemies.

In *Escher* v. *Woods, supra,* the Custodian had paid the proceeds of sale of non-enemy property into the treasury

of the United States after deducting 2% which he had paid into a fund to be used for paying the expenses of his office during the period of administration; expenses not shown to be rightly chargeable against the proceeds of sale. In allowing recovery of the amount improperly deducted the right to recover was not thought to turn on whether the expenses had or had not been in fact paid out by the Custodian. This Court placed its decision on the broad ground that under the statute the unlawfulness of the charges made by the custodian against the proceeds of sale of non-enemy owned property is open to judicial inquiry and that the limitation of recovery to net proceeds did not permit an unauthorized outlay to be deducted from the proceeds of sale.

We intimate no opinion as to the lawfulness of the deducted expenditures. We decide only that the right to challenge them is not lost because they have been made.

We do not pass upon the validity of the defense of the Statute of Limitations and others, the possibility of which is suggested by the allegations of the bill of complaint. Even if raised by the government's motion to dismiss for want of " jurisdiction of the persons of the defendants or of the subject matter of the action " they were not considered below or urged here. Whether, in a suit brought under the Trading with the Enemy Act against the Alien Property Custodian, these defenses go to the jurisdiction, as has been held in the case of the defense of the Statute of Limitations in a suit against the United States under the Tucker Act, see *Compagnie Generale* v. *United States,* 51 F. (2d) 1053, 1056; cf. *Finn* v. *United States,* 123 U. S. 227, or whether they go only to the merits, are questions which have never been decided. They have not been argued here. We think we should not undertake to decide them in the present posture of the case. *Scott* v. *Armstrong,* 146 U. S. 499, 512, 513.

*Reversed.*

MR. JUSTICE ROBERTS, dissenting.

Although I do not disagree with the opinion of the Court respecting the meaning of the word "held" as found in § 9 (a) of the Trading with the Enemy Act, I think we should not decide the point in this case. The order of the District Judge dismissing the action for want of jurisdiction was right notwithstanding he may have been in error as to the necessity of actual possession of the property or its proceeds by the Government's representatives at the date of suit.

The action is clearly one against the United States [1] and consent to be sued evidenced by Act of Congress is essential to jurisdiction. The question is whether such consent has been given. Whatever view may be taken of the nature of the action as disclosed by petitioner's pleading the answer must be in the negative.

The Government has consented to be sued as is evidenced by § 9 (a). It appears by petitioner's own declaration, however, that it availed itself of the privilege of suit thus granted and recovered a judgment for the full amount of the proceeds of the stock which had been seized by the Alien Property Custodian. The present action is a second suit to recover another judgment for a portion of the same money embraced in the former judgment. I fail to find any indication in the Act that Congress intended to afford a claimant two suits and two judgments for the same moneys.

Entirely apart from the provisions of the Trading with the Enemy Act, however, the District Court is without jurisdiction to permit a second action for a sum admittedly embraced in a judgment which is of record in that court.

[1] *Banco Mexicano* v. *Deutsche Bank,* 263 U. S. 591, 602; *Von Bruning* v. *Sutherland,* 58 App. D. C. 258; 29 F. (2d) 631; *Henkel's* v. *Sutherland,* 271 U. S. 298, 301.

84

Suit cannot be maintained under the Tucker Act as amended.[2] The six year limitation on suits against the Government is not merely a defence to be pleaded or waived but is jurisdictional.[3] The sale of the property by the Custodian and the recovery of the first judgment for the proceeds of the sale both occurred more than six years prior to the institution of this action. Moreover, the express provision of § 7 of the Trading with the Enemy Act, that the sole relief and remedy of any person having a claim under the Act shall be that afforded by the Act, precludes a suit for the property or the proceeds of it under the Tucker Act.[4]

The complaint asserts that the judgment recovered for the entire proceeds of the sale of plaintiff's stock has been formally released and satisfied. The satisfaction is said to have been obtained by duress. If the present proceeding be viewed as an action on the judgment the satisfaction is a bar to its maintenance; if treated as an appeal to the equity powers of the Court to set aside the release and satisfaction the Tucker Act is not a consent to the prosecution of such an action in the District Court.[5]

I think it idle to remand the case to the District Court merely because of an erroneous reason assigned in support of the order of dismissal, since the suit will again have to be dismissed for the lack of jurisdiction. I should, therefore, affirm the order of the District Court.

MR. JUSTICE SUTHERLAND concurs in this opinion.

[2] U. S. Code, Tit. 28, § 41 (20).

[3] Ford v. United States, 116 U. S. 213; Finn v. United States, 123 U. S. 227; United States v. Wardwell, 172 U. S. 48; Campagnie Generale v. United States, 51 F. (2d) 1053, 1056.

[4] Compare Johnson v. United States Shipping Board, 280 U. S. 320; Mara v. United States, 54 F. (2d) 397.

[5] United States v. Jones, 131 U. S. 1; compare Holmes v. United States, 78 Fed. 513; New England Furniture & Carpet Co. v. United States, 2 F. Supp. 650.