**DRAEGER SHIPPING CO., Inc., et al. v. CROWLEY, Alien Property Custodian.**

District Court, S. D. New York.

Feb. 13, 1943.

William A. Marden, of New York City, for plaintiffs.

Mathias F. Correa, of New York City, and George A. McNulty and A. Matt. Werner, both of Washington, D. C., for defendant.

BONDY, District Judge.

This is a motion by the plaintiffs for an order directing the Alien Property Custodian to retain in his custody until final judgment the property of the plaintiff corporation, Draeger Shipping Co., Inc., and the stock of the corporation registered in the name of the plaintiff, Frederick Draeger, and directing the defendant to permit the corporation to carry on its business and Draeger to act as its president, under the supervision and control of the defendant.

The motion is opposed by the defendant who also moves to dismiss the complaint.

The complaint and affidavits submitted in support of the motion allege the following:

The plaintiff Draeger has been a citizen of the United States since September, 1898. He is not an "enemy", "ally of enemy" or a "national" of any foreign or enemy country within the meaning of the Trading With the Enemy Act as amended by Title III of the First War Powers Act, 1941, 50 U.S.C.A.Appendix § 616 et seq., or any regulation, proclamation or order issued by the President. He is the sole owner of all the capital stock of the plaintiff corporation. All officers, directors and stockholders thereof are citizens and residents of the United States and since 1934 no other than he had any interest therein.

The plaintiff corporation is a domestic corporation engaged in the business of foreign freight forwarder and Custom House broker. At no time since its organization has the corporation or any of its stock been owned or controlled, directly or indirectly, by any foreign country or any national thereof. It never was a resident within the territory of any nation with which the United States is at war. Nor was it ever an "enemy" or "ally of enemy".

The defendant, purporting to act pursuant to the Trading With the Enemy Act, 50 U.S.C.A. Appendix § 1 et seq., and Executive Order No. 9095, as amended, 50 U.S.C.A. Appendix § 6 note, took from the plaintiffs the property of the corporation and its stock registered in the name of the plaintiff Draeger, elected another president in his place, and proceeded to liquidate the corporation. The order vesting in the Alien Property Custodian the stock of the corporation in Draeger's name, alleges that he holds it for the benefit of Schenker & Company, Berlin, Germany, and it "represents ownership of said business enterprise which is a national of a designated enemy country (Germany)." Draeger asserts that he holds the stock solely for his own benefit. He denies that he holds it for the benefit of Schenker & Company, of Berlin, and denies that he or the corporation ever has been controlled by or ever acted for or as a cloak for Germany or any other enemy country or any person within such country.

The affidavits submitted in opposition to the motion set forth that the defendant after thorough investigation, revealing facts alleged in the affidavits, found that the corporation and Draeger were nationals of Germany as defined in Executive Order 9095 as amended; that they were controlled by or acting for or as a cloak for Germany or persons within Germany, and that Draeger held the stock of the plaintiff corporation for the benefit of Schenker & Company, Berlin, a national of Germany, and that the defendant has determined that the interests of the United States require the liquidation of the corporation.

The plaintiffs contend that this suit has been properly brought under Section 9(a) of the Trading With the Enemy Act as amended, 50 U.S.C.A. Appendix § 9(a), for a return of their property, because neither is an enemy nor ally of an enemy

and because the property is not controlled by an enemy, an ally of an enemy or a national of any foreign or enemy country. The defendant contends that the court is without jurisdiction, that Section 9(a) of the Trading With the Enemy Act as amended applies only to seizures of property of enemies or allies of enemies under Section 7(c) of the Act and not to action taken with respect to property of a foreign "national" under Section 5(b) of the Act, as so amended, pursuant to which the property was vested in the Alien Property Custodian. The defendant further contends that adequate administrative remedies for the adjustment of plaintiffs' claims have been set up by the Alien Property Custodian pursuant to Section 5(b) as amended and regulations and Executive Orders, issued thereunder, and that plaintiffs are not entitled to judicial relief, because they have not exhausted these administrative remedies before bringing this suit.

Title III, Section 301 of the First War Powers Act, 1941, which amended Section 5(b) of the Trading With the Enemy Act, authorizes the President during the time of war or other national emergency to regulate, direct or prohibit any dealing in, or exercising any right with respect to any transaction involving any property in which any foreign country or national thereof has any interest by any person or with respect to any property, subject to the jurisdiction of the United States, and that any property or interest of any foreign country or national thereof shall vest upon terms directed by the President in such agency as may be designated by him, and upon such terms and conditions as the President may prescribe, such interest or property shall be held, administered, liquidated or sold for the benefit of the United States.

Section 9(a) of the Trading With the Enemy Act as amended, provides that any person not an enemy or an ally of an enemy claiming any right or title in any property which may have been seized by the Alien Property Custodian may file with the custodian a notice of his claim and the President after application is made therefor, may order the delivery to the claimant of the property so held.

It further specifically provides that if the claimant shall have filed such a notice but shall not have made any application to the President, said claimant may institute a suit to establish his right or interest and

that if so established, the court shall order the delivery to the claimant of the property so held or the interest therein to which the court shall determine said claimant is entitled.

It also expressly provides that if suit shall be so instituted such property shall be retained in the custody of the Alien Property Custodian until the suit has been terminated.

Title III of the First War Powers Act empowers the President to prescribe definitions not inconsistent with its purpose for any and all of the terms used therein.

Section 5, subd. E of Executive Order 8389 as amended, 12 U.S.C.A. § 95 note, provides that the term "national" shall include any corporation which since the effective date of the order has been controlled by or a substantial part of the stock of which has been owned or controlled directly or indirectly by a foreign country or any national thereof and any person to the extent such person is or has been since such date acting directly or indirectly for the benefit or on behalf of any national of such foreign country and any person who there is reasonable cause to believe is a "national", and any other person who is determined by the Secretary of the Treasury to be, or to have been, since such effective date acting or purporting to act directly or indirectly for the benefit or under the direction of a foreign country designated in the order as a national thereof.

Executive Order No. 9193, issued by the President, amending Executive Order 9095, 50 U.S.C.A. Appendix § 6 note, establishes the office of the Alien Property Custodian and empowers the custodian to manage, supervise, control or vest any business enterprise which is a national of a designated enemy country and with respect to any property owned or controlled on behalf of any enemy country or national thereof. It vests in the custodian all powers and authority conferred upon the President by Section 5(b) of the Trading With the Enemy Act as amended, and it provides that the term "designated enemy country" shall mean any foreign country with which the United States is at war and that the term "national" shall have the meaning prescribed in Section 5 of Executive Order No. 8389 as amended, provided, however, that persons not within designated enemy countries shall not be deemed to be nationals of a designated enemy country unless the Alien

Property Custodian determines that such person is controlled by or acting for or on behalf of (including cloaks for) a designated enemy country or a person within such country or that the national interest of the United States requires that such person be treated as a national of a designated enemy country. It provides that for the purpose of this executive order any determination by the Alien Property Custodian, that any property or interest of any foreign country or national thereof is the property or interest of a designated enemy country or national thereof, shall be final and conclusive as to the power of the Alien Property Custodian to exercise any of the power or authority conferred upon the President by Section 5(b) of the Trading With the Enemy Act, as amended.

Regulations by the Alien Property Custodian, Section 501.1(b) (7 F.R. 2290, March 26, 1942), establishes a committee to be known as the Vested Property Claims Committee to hear claims respecting property vested in the Alien Property Custodian, pursuant to Section 5(b) as amended.

■ Title III of the First War Powers Act, 1941 by its express language amends only "the first sentence of subdivision (b) of section 5 of the Trading With the Enemy Act of October 6, 1917 (40 Stat. 411), as amended."

Had the Congress intended that it should have the effect of an entirely new and separate enactment the Congress would have enacted it as it did the other titles of the Act, as a separate act and not as an amendment. It therefore must be assumed that Congress intended that all the provisions of the Trading With the Enemy Act of 1917 as amended shall be held applicable to this amendment so far as this consistently can be done. The amendment merely extended the power of the President under the Trading With the Enemy Act without any indication that Congress intended to affect the rights or remedies given by the Act to others than enemies or allies of enemies in case of the erroneous seizure of their property.

It can not be assumed in the absence of compelling reasons that Congress intended to withhold from a citizen of the United States whose property has been seized by the Alien Property Custodian on the erroneous ground that it is controlled by a foreign or enemy country or national thereof (however defined) a judicial remedy which it grants to everyone but an enemy or ally of an enemy, whose property has been seized on the ground that it is enemy owned.

Moreover, to hold that Section 9(a) does not apply to action taken under Section 5(b) as amended, and to construe Title III of the First War Powers Act, 1941, as giving to the Alien Property Custodian the power to retain property of a citizen on the ground that it is owned or controlled by a national of a foreign or enemy country without giving the citizen a right to establish in a court that it is not so owned or controlled would raise a serious question as to the constitutionality of the provisions of Title III. Compare St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 77, 84, 56 S.Ct. 720, 80 L.Ed. 1033.

The First War Powers Act, 1941, itself does not provide any remedy whatsoever for the return of property erroneously seized as property of a national of a foreign or enemy country. If construed as unaffected by Section 9(a), it would depend upon the will of the President or his representative whether there should be even an administrative remedy and if so what it shall be.

Notwithstanding that the Trading With the Enemy Act of 1917 was a war measure, the seizures by the Alien Property Custodian under it before the 1941 amendment were held to be constitutional only because adequate remedies were provided by the Act for a return of the property or its proceeds in case the property was erroneously seized Stoehr v. Wallace, 255 U.S. 239, 41 S.Ct. 293, 65 L.Ed. 604; Central Union Trust Co. v. Garvan, 254 U.S. 554, 41 S. Ct. 214, 65 L.Ed. 403, affirming Garvan v. $20,000 Bonds, 2 Cir., 265 F. 477, 479, in which there is the direct statement "If persons not alien enemies, or allies of alien enemies were given no means to protect their interests in such property the seizure would be unconstitutional as without due process of law; but they are given such remedies under section 9."

The defendant argues that the Court of Claims has jurisdiction to decide claims against the government and also that the law implies a promise on the part of the government to make compensation for private property appropriated by it for public use, which is enforceable by the courts. It must suffice here to state that these remedies were in existence when the foregoing cases were decided and that this suit was brought in equity chiefly for an in-

junction against liquidation and not for compensation.

■ "Acts of Congress are to be construed and applied in harmony with and not to thwart the purpose of the Constitution." Phelps v. United States, 274 U.S. 341, 47 S.Ct. 611, 612, 71 L.Ed. 1083; Russian Volunteer Fleet v. United States, 282 U.S. 481, 491, 51 S.Ct. 229, 75 L.Ed. 473; Becker Steel Co. v. Cummings, 296 U.S. 74, 79, 56 S.Ct. 15, 80 L.Ed. 54.

The legislative history of the Act does not disclose that this construction is inconsistent with the purposes of Congress in extending the War Powers of the President over nationals of foreign countries.

■ The authorities cited by the defendant which hold that the court should act with great restraint in granting injunctions in cases in which important public or national interests are involved, especially in time of war, are not applicable. Discretion is not involved. None is left to the court. Congress, in which the ultimate power to declare public policy is vested, makes it mandatory that the Alien Property Custodian should in case of suit brought against him retain the property in his possession until final disposition of the suit. He would be acting without jurisdiction and beyond the powers delegated to him were he to do otherwise. Congress has determined that there shall be a judicial remedy afforded to all but enemies and allies of an enemy in cases of erroneous seizure of their property notwithstanding the existence of war.

■ The Act itself provides that any person not an enemy or ally of enemy may apply either to the President or to the Alien Property Custodian for the return of his property or maintain a suit in equity to establish his right to the possession of such property.

It is true that in Texas & P. R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, 9 Ann.Cas. 1075, a rate case, relied on by the government, it was held that notwithstanding that the Interstate Commerce Act allowed the choice of an administrative or judicial remedy, the plaintiff must exhaust his administrative remedy before he may seek the judicial remedy. However, this case is not controlling because the same court subsequently held that under the Trading With the Enemy Act the plaintiff may have recourse to the judicial remedy without having exhausted his administrative remedies. Stoehr v. Wallace, 255 U.S. 239, 246, 41 S.Ct. 293, 65 L.Ed. 604.

It is not true, as defendant contends, that if Section 9(a) were held applicable to Section 5(b) as amended the Alien Property Custodian would be required to return the property on a showing that the claimant was neither an enemey nor ally of enemy and that thereby he would be prevented from holding property of a national of a foreign or enemy country seized by him. The fact that anyone other than an enemy or ally of enemy may recover his property on proving that he is not a national of a foreign or enemy country within the meaning of the Act or the President's definition, does not establish that a foreign or enemy country or national thereof within such meaning will succeed in obtaining possession of property.

The decision of this court that Section 9 applies to action taken under Section 5(b) as amended renders it unnecessary to determine whether Section 5(b) otherwise would be unconstitutional and whether if Section 9 does not apply and the Act is unconstitutional the plaintiff was required to seek relief from the Alien Property Custodian under the administrative remedies provided by rules and regulations and orders of the President before resorting to the court.

The motion to dismiss the complaint is accordingly denied and the application of the plaintiffs granted only to the extent of directing the defendant not to liquidate the business of the company or sell its stock pending the determination whether they are nationals of a foreign or enemy country, or whether the seized property is owned or controlled by a foreign or enemy country or national thereof.

This disposition of the motion follows the specific direction of Congress in Section 9(a) that the property shall be retained by the Custodian until the suit is terminated, without affecting any rights of the plaintiffs under the Constitution and without any apparent interference with the successful prosecution of the war.