## SWISS BANK CORPORATION v. CLARK.
### Civ. 32–570.

District Court, S. D. New York.

Aug. 15, 1947.

White & Case, of New York City (Lowell Wadmond and James McCarron, both of New York City, of counsel), for plaintiff.

John F. X. McGohey, U. S. Atty., of New York City, for the Southern Dist. of New York.

Lawrence H. Axman, Asst. U. S. Atty., of New York City, John F. Sonnett, Asst. Atty. Gen., Harry LeRoy Jones, Sp. Asst. to the Atty. Gen., and George B. Searls and George W. Jansen, Chief Trial Attys., both of Washington, D. C., for defendant.

BRIGHT, District Judge.

Defendant moves for judgment on the pleadings upon the ground that the complaint fails to state a claim upon which relief can be granted, for the reason that it appears that plaintiff is a national of a foreign country whose property the Alien Property Custodian was authorized to vest and retain under § 5(b) of the Trading With the Enemy Act, 50 U.S.C.A.Appendix, § 5(b), as amended by Title III of the First War Powers Act of 1941, § 301, 50 U.S.C.A.Appendix, § 616, and under Executive Order No. 9095, as amended, 50 U.S.C.A.Appendix, § 6 note.

Plaintiff claims that it has the right to maintain this action to recover the property mentioned in the complaint under § 9 of the Trading With the Enemy Act.

The complaint is laid under the Trading With the Enemy Act. Plaintiff is a Swiss citizen and not an enemy or the ally of an enemy of the United States or a national of a designated enemy. On April 20, 1946, the Alien Property Custodian served notice upon plaintiff purporting to vest, pursuant to § 5(b) mentioned, shares of common and preferred stock of Schering Corporation, a New Jersey corporation, other shares of common stock of Schering Corporation, a New York corporation, and

other shares of common stock of Sherka Chemical Company, Inc., a New York corporation. On December 1, 1937, plaintiff had loaned Chemical & Pharmaceutical Enterprises, Ltd., another Swiss corporation, 5½ million Swiss francs and had taken as collateral security the stocks mentioned, upon which loan there remains unpaid over 5¼ million francs, for which plaintiff has a lien upon the collateral mentioned. At the time of vesting, and for a long time prior thereto, the stocks had been registered in the name of Gunther & Co., for the benefit of plaintiff. Without consent of the plaintiff and without making just compensation to it, and upon demand of the Alien Property Custodian, who claimed to be the owner of the stock aforesaid, on or about June 18, 1942, the New Jersey Schering Corporation cancelled the certificates and issued new ones in the name of said Custodian. On August 21, 1945, plaintiff duly made and filed with the Alien Property Custodian a notice of its claim to said securities and property, but made no application for a hearing or to the President, as mentioned in § 9(a). It now prays judgment that the court declare it to be the pledgee of the securities mentioned and entitled to hold the same as collateral to said loan, that defendant has no title or interest therein, that he be enjoined from asserting to have any such, from exercising any rights of ownership or control thereover, from disposing of said securities, and from disposing of or interfering with the rights, patents, and property of the corporations whose securities were thus pledged, and from granting or offering to grant any license with respect thereto. It also prays that the vesting order be declared null, that the defendant be directed to transfer to plaintiff as pledgee the certificate issued to defendant, or, in the alternative, that such certificates be cancelled and the former be reinstated on the books of the corporation. Defendant has joined issue, the answer, besides a general denial, alleging two defenses which are in substance, one of them, that the transactions upon which plaintiff seeks to recover were a cloak to conceal the fact that Schering A. G., a national of Germany, was the real owner of the stock, and the second, that plaintiff was a corporation incorporated within a country other than the United States and doing business within the territory of a nation with which the United States was at war, and as such was and is an enemy within the meaning of the Trading With the Enemy Act and has no standing to institute or maintain this action.

Section 5(b) as so amended, so far as material here, provides: "During the time of war or during any other period of national emergency declared by the President, the President may, through any agency that he may designate, or otherwise, and under such rules and regulations as he may prescribe * * * (B) investigate, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition holding, withholding, use * * * or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest, by any person, or with respect to any property, subject to the jurisdiction of the United States; and any property or interest of any foreign country or national thereof shall vest, when, as, and upon the terms, directed by the President, in such agency or person as may be designated from time to time by the President, and upon such terms and conditions as the President may prescribe such interest or property shall be held, used, administered, liquidated, sold, or otherwise dealt with in the interest of and for the benefit of the United States, and such designated agency or person may perform any and all acts incident to the accomplishment or furtherance of these purposes; * * *."

The powers and duties of the President under this section were delegated to, and invested in, the Alien Property Custodian by Executive Order No. 9095, as amended, 7 F.R. 1971, and it was further provided that any property or interest therein of any foreign country or a national thereof shall vest in the Alien Property Custodian whenever he shall so direct.

It is not questioned that Switzerland was such foreign country, nor that plaintiff was a national thereof.

Section 9 of the Trading With the Enemy Act, under which plaintiff claims, so

far as material, provides: "(a) Any person not an enemy or ally of enemy claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him * * * may file with the said custodian a notice of his claim under oath and in such form and containing such particulars as the said Custodian shall require; and the President, if application is made therefor by the claimant, may order the payment, conveyance, * * * to said claimant of the money or other property so held * * *: Provided, That no such order by the President shall bar any person from the prosecution of any suit at law or in equity against the claimant to establish any right, title, or interest which he may have in such money or other property. If the President shall not so order within sixty days after the filing of such application or if the claimant shall have filed the notice as above required and shall have made no application to the President, said claimant may institute a suit in equity * * * in the district court of the United States for the district in which such claimant resides, or, if a corporation, where it has its principal place of business * * * to establish the interest, right, title, or debt so claimed, and if so established the court shall order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian * * * or the interest therein to which the court shall determine said claimant is entitled."

The vesting order of which complaint is made, dated April 18, 1942, 7 F.R. 2922, states that the Custodian, finds upon investigation that the stock involved was "the property of nationals of a foreign country", and that the action therein taken was in the public interest, and orders and declares that such properties, including all interest therein, were thereby vested in the Custodian, to be held, used, administered, liquidated, sold, or otherwise dealt with in the interest and for the benefit of the United States. It did not find that the stocks were the property of an enemy alien, nor an ally of one, and directed that such property and the proceeds thereof be held in special account pending further determination; and also, "This shall not be deemed to limit the power of the Alien Property Custodian to return such property or the proceeds thereof * * * if and when it should be determined that such return or compensation should be made."

The contention of the defendant is that under § 5(b) and Executive Order No. 9095, the Alien Property Custodian was authorized to vest property, and that as such vesting order was authorized by law, and, therefore, the title of the Custodian legal, plaintiff cannot maintain the action because it no longer had any interest in the property. It is further contended that, if plaintiff is entitled to any relief or compensation for the property seized, it can recover therefor under the Tucker Act, 28 U.S.C.A. § 41(20), if it shows itself to be a friendly alien. It further contends that § 9(a), under which plaintiff claims the right to maintain the action, is available only to correct seizures made under a mistake of fact or law; in other words, to permit recovery by those as to whom seizure was legally wrong when made.

As before stated, plaintiff claiming not to be an enemy or ally of an enemy, affirms that its only remedy is under § 9(a), § 7(c) of the Trading With the Enemy Act providing: "The sole relief and remedy of any person having any claim to any money or other property heretofore or hereafter conveyed, * * * delivered, or paid over to the Alien Property Custodian, or required so to be, or seized by him shall be that provided by the terms of this Act"; and that because of that limitation, it has no remedy under the Tucker Act.

I think the plaintiff is right. The case of Uebersee Finanz-Korporation v. Markham, 81 U.S.App.D.C. 284, 158 F.2d 313, seems to be directly in point. There the complaint was dismissed and that dismissal reversed on appeal. Plaintiff, a Swiss national, was the owner of stock in sundry American corporations which the Custodian had seized as the property of a foreign national and had vested in himself. Plaintiff sued under § 9(a), alleging that it was not an enemy or ally of an enemy and that

the property was not then or any other time held for an enemy or ally of an enemy. The defendant's motion to dismiss was upon the same grounds as here asserted, and it insisted that under § 5(b) the vesting was absolute and not subject to attack, and that plaintiff might obtain just compensation by way of suit in the Court of Claims. It was held that plaintiff's right to recovery was limited by the terms of § 7(c) of the Act to a suit under § 9(b), for only to that extent and in that manner had the United States consented to be sued. It was further decided, answering defendant's contention, that since the amendment of § 5(b), § 9(a) was no longer applicable, that the amendment to § 5(b) did not repeal, expressly or impliedly, the existing terms of § 9(a), and, reading them together, the two sections did not conflict but constituted a reasonable program to meet the emergency of the war.

The determination there made, that § 9(a) allows any person not an enemy or an ally of an enemy to sue the Custodian in the federal courts, had previously been upheld in Markham v. Cabell, 326 U.S. 404, 410, 66 S.Ct. 193, 196, 90 L.Ed. 165, where Mr. Justice Douglas wrote: "The right to sue, explicitly granted by § 9(a), should not be read out of the law unless it is clear that Congress by what it later did withdrew its earlier permission. We can find no indication in the 1941 legislation that Congress by amending § 5(b) desired to delete or wholly nullify § 9(a). On the contrary, the normal assumption is that where Congress amends only one section of a law, leaving another untouched, the two were designed to function as parts of an integrated whole."

That suit under § 9(a) is plaintiff's only remedy, limited as such by the provisions of § 7(c), was long since decided in Becker Steel Co. v. Cummings, 296 U.S. 74, 79, 56 S.Ct. 15, 80 L.Ed. 54; which also held that the provisions of § 9(a) must be broadly construed to give effect to its remedial purpose. (Page 80 of 296 U.S., 56 S.Ct. 15, 80 L.Ed. 54) And it has been held that plaintiff here would have no remedy in the Court of Claims. Escher v. United States, 68 Ct.Cl. 473, 478, certiorari denied 281 U.S. 752, 50 S.Ct. 353, 74 L.Ed. 1163. See

also Josephberg v. Markham, 2 Cir., 152 F.2d 644, 649; Draeger Shipping Co. v. Crowley, D.C., 49 F.Supp. 215, 218.

It would seem that the title vested in the Custodian is but a defeasible one subject to being divested by a proper suit under § 9. Central Union Trust Co. v. Garvan, 254 U.S. 554, 567, 569, 41 S.Ct. 214, 65 L. Ed. 403; Salamandra Insurance Co. v. New York Life Insurance & Trust Co., D.C., 254 F. 852, 860. I do not think Silesian-American Corp. v. Markham, 2 Cir., 156 F. 2d 793 is controlling.

The motion is denied.