## PALMER et al. v. RECONSTRUCTION FINANCE CORPORATION.

No. 48, Docket 20714.

Circuit Court of Appeals, Second Circuit.

Dec. 4, 1947.

Before L. HAND and AUGUSTUS N. HAND, Circuit Judges.

Hermon J. Wells, of New Haven, Conn. (H. H. Corbin, of New Haven, Conn., of Counsel), for appellants.

Rudolf P. Berle, of New York City, for appellee.

Berle, Berle, Agee & Land, of New York City, and W. Meade Fletcher, of Washington D. C. (Robert H. Seabolt (of Berle, Berle, Agee & Land), of New York City, and James L. Dougherty, of Washington, D. C., of counsel), for Reconstruction Finance Corporation.

L. HAND, Circuit Judge.

The trustees in reorganization of the New York, New Haven and Hartford Railroad Company, appeal from an order dismissing a petition in which they asked leave to pay off loans made by the Reconstruction Finance 'Corporation—which we shall call the "R.F.C."—to the railroad with interest at four per cent, instead of at five per cent at which the road had borrowed the money. When the reorganization proceeding was begun on October 23, 1935, the road had already borrowed of the "R.F.C." more than $7,000,000 upon notes bearing interest at five per cent, for which it had put up as collateral an assorted group of securities of the "New Haven System." From November 1, 1933, until shortly after the proceeding began, the "R.F.C." had accepted four per cent instead of five, but it thereafter demanded five per cent as stipulated. The trustees in reorganization tried unsuccessfully a number of times to induce it to go back to the lower rate, and finally on December 21, 1938, Jesse Jones, Esq., chairman of the "R.F.C." wrote them the letter which we quote in the margin.[1] This the trustees never answered, nor did they ever promise to pay the notes, or tender payment. However, the interest upon the collateral proved large enough, not only to meet the interest in full but to make substantial inroads upon the principal; and large parts of the collateral were also sold and applied in further reduction. Over six years after the letter of December 21, 1938, that is on January 29, 1945, the trustees wrote to the "R.F.C.," asking the reduction in the rate from five to four per

---

[1] "RECONSTRUCTION FINANCE CORPORATION
WASHINGTON

Jesse H. Jones
Chairman of the Board
December 21, 1938.
Dear Sirs:
Referring to your letter of November 10, beg to advise that if, in the reorganization of the New York, New Haven and Hartford Railroad Company, the claims of this Corporation have been fully paid, this Corporation will accept 4 per cent from the date of the bankruptcy in full settlement of the interest, regardless of the rate named in the face of the note.
Should the road not be able to arrange private financing on reasonable terms, we will be glad to discuss with it a loan to the reorganized company for this purpose and to effect a reorganization.
Yours very truly,
Jesse H. Jones,
Chairman."

cent, "retroactive" to the beginning of the proceeding, and stating as their reason that nearly one half of the principal had by then been paid, and that "interest at the foregoing rates has been paid currently." They did indeed mention the letter of December 21, 1938, only to say that the situation had much improved since it was written. The "R.F.C." replied on February 14, refusing to make the "retroactive" reduction, but consenting to the reduction effective January 1, 1945, and from then on this was the agreement; this controversy is over one per cent from October 23, 1935, or thereabouts, to January 1, 1945. Twice more—on July 10, 1945 and on June 18, 1946—the trustees asked the same "retroactive" reduction, offering to pledge, as additional collateral, securities which they had redeemed from other loans; and both times the "R.F.C." again refused. Shortly after the last of these requests had been denied—on July 12, 1946—the trustees filed the petition now at bar, basing their claim upon Mr. Jones's letter. Their position is double: they allege (1) that they had let pass opportunities to refinance the notes at a lower rate than five per cent, acting in reliance upon the letter; and they allege (2) that it was a unilateral offer to reduce the interest, if they speeded up realization on the collateral, which they did. The only testimony offered to prove that they had in fact let pass any opportunities to refinance the notes in reliance upon the promise, was that of the road's vice-president and comptroller, who, when asked whether the trustees would have tried to refinance the notes, answered: "I think that letter certainly had a very large bearing, and we had all interpreted it that if the loans were paid off in the reorganization proceedings that (sic) the 4% interest rate would be made retroactive to the date of the proceedings." The judge held that they had not acted in reliance upon the promise; and that it was, to say the most, exceedingly doubtful whether they could have refinanced the notes for 4% or better.

■ We addressed ourselves first to a point which appears only in the trustees' reply brief on this appeal in answer to an argument in the "R.F.C.'s" brief that the law of New York does not recognize the doctrine of "promissory estoppel," on which the trustees rely. They invoke an amendment to § 33, subd. 2 of the New York Personal Property Law, Consol. Laws, c. 41, made in 1936, under which "an agreement * * * to discharge in whole or in part, any contract * * * shall not be invalid because of the absence of consideration," if it is in writing and signed by the party. They argue that since the notes were made in New York and were payable there, the validity of the promise to discharge a part of the interest must be judged by the law of that state, and that Mr. Jones's letter satisfied the conditions prescribed in the section, although the promise was not made in New York. We refuse to decide this question, for, although it is true that we may affirm a judgment upon grounds not urged in the lower court, we may not reverse one upon such a ground.[2] This is particularly apposite in the case of an argument raised for the first time after the appellee has filed its brief, which it has had no chance to answer. Whether the point will be open in the district court after this appeal, we do not say; nor do we indicate any opinion on the merits.

■ Coming then to the questions open to us, we start with the finding—for we deem it one— that "the failure of the Trustees to refinance the R.F.C. loan may more reasonably be attributed to the shape of the plan and to their reluctance to introduce an additional complication into cumbersome proceedings than to the inducement of Mr. Jones' promise." Certainly there was enough support for this in the evidence to prevent our holding that it was "clearly erroneous." We need not decide whether any alternative refinancing would have been possible; but we do de-

2 Virtue v. Creamery Package Co., 227 U.S. 8, 38, 33 S.Ct. 202, 57 L.Ed. 393; Becker Co. v. Cummings, 296 U.S. 74, 80, 56 S.Ct. 15, 80 L.Ed. 54; General Utilities Co. v. Helvering, 296 U.S. 200, 206, 56 S.Ct. 185, 80 L.Ed. 154; Helvering v. Tex-Penn Co., 300 U.S. 481, 498, 57 S.Ct. 569, 81 L.Ed. 755; Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037; Libbey-Owens-Ford Glass Co. v. Sylvania Industrial Corp., 2 Cir., 154 F.2d 814, 816.

cide that those difficulties which Judge Hincks points out in his opinion, were serious enough to make it incumbent upon the trustees to show in more detail than they did that they could have surmounted them. Moreover, that aside, their three later efforts to induce the "R.F.C." to reduce the interest "retroactively" were inconsistent with their present position. It is enough to consider only the last of these, that in June, 1946. If during the past seven and a half years they had, in reliance upon the letter, let pass available opportunities for refinancing, we cannot imagine what could have led them to use this language: "* * * we renew our request for a rate of 4% for the whole period of the proceedings with the understanding if you are agreeable that we will petition the Court for an order providing for the pledge of the former Railroad Credit Corporation collateral with your Corporation in consideration of the reduction." Surely, if they then believed that they had a valid right to the reduction, or even if they were putting forward an argument which, though not legally binding, rested in any degree whatever upon the equity of their position, that was the occasion to say that they had been relying all along upon the promise, and that the "R.F.C." was, in honor at least, bound to perform it. Instead of which we find them offering as a reason, not what they *had* done, but what they proposed to do. Finally, what could be more equivocal and less convincing than the testimony we have quoted—the only testimony which they produced at all? Clearly; the whole notion of a "promissory estoppel" is an afterthought, after their precatory approaches were finally seen to be fruitless.

Nor is their second ground any stronger: i.e. that the letter was a unilateral offer in consideration of their bestirring themselves "to speed up the payment" of the notes, which they accepted by repeatedly asking and getting leave of the court to sell the collateral, by virtue of which they made "various sums (aggregating nearly two million dollars) available." The letter admits of no such interpretation, even though the condition was also a consideration; it did not ask for efforts by the trustees; it required that the loans should be "fully paid." It is impossible to torture those words into an effort to do the best one could, when one could.

Order affirmed.