James E. **TANSLEY**

v.

**Ella T. GRASSO, Secretary of the State of Connecticut.**

William J. **VERRIKER**

v.

**Ella T. GRASSO, Secretary of the State of Connecticut.**

Peter **ROTATORI, Jr.**

v.

**Ella T. GRASSO, Secretary of the State of Connecticut.**

**Civ. A. Nos. 13937–13939.**

United States District Court, D. Connecticut.

July 31, 1970.

**514**

James T. Healey, Healey & Healey, Waterbury, Conn., for plaintiffs.

Raymond J Cannon, Asst. Atty. Gen., Hartford, Conn., for defendant.

Before ANDERSON, Circuit Judge, and CLARIE and ZAMPANO, District Judges.

## MEMORANDUM OF DECISION

CLARIE, District Judge.

The plaintiffs have petitioned the Court to declare unconstitutional and invalid that part of Conn.Gen.Stat. § 9–400,[1] which imposes as a condition

---

1. Conn.Gen.Stat. § 9–400 provides:

"Within the time specified in section 9–399, a candidacy for nomination by a political party to a state office may be filed by or on behalf of any person whose name appears upon the last completed enrolment list of such party in any municipality within the state and who has received at least twenty per cent of the votes of the convention delegates present and voting on any roll-call vote taken on the endorsement or proposed endorsement of a candidate for such state office, whether or not the party-endorsed candidate for such office received a unanimous vote on on the last ballot, and a candidacy for nomination by such party to a district office may be filed by or on behalf of any person whose name appears upon the last-completed enrolment list of such party within any municipality or part of a municipality forming a component part of such district and who has received at least twenty per cent of the votes of the convention delegates present and voting on any roll-call vote taken on the endorsement or proposed endorsement of a candidate for such district office, whether or not the party-endorsed candidate for such office received a unanimous vote on the last ballot, by the filing with the secretary of the state of a petition as hereinafter provided signed by at least five thousand electors whose names appear on the last-completed enrolment list of such party in one or more municipalities within the state, in the case of candidacy for nomination to any state office; or a petition signed by at least two thousand electors whose names appear on the last-completed enrolment list of such party in one or more municipalities within the congressional district, in the case of candidacy for nomination to a congressional district office; or a petition signed by at least seven hundred and fifty electors whose names appear on the last-completed enrolment list of such party in one or more municipalities within the county, in the case of candidacy for nomination to the office of sheriff; or a petition signed by at least three hundred and fifty electors whose names appear on the. last-completed enrolment list of such party in one or more municipalities or parts of municipalities forming component parts of a senatorial district composed of two or more towns or of a town or towns and a part or parts of another town or other towns, in the case of candidacy for nomination to the office of state senator from such a district; or a petition signed by at least one hundred electors whose names appear on the last-completed enrolment list of such party in one or more municipalities within a probate district composed of two or more towns, in the case of a candidacy for nomination to the office of judge of probate from such district, except that such petition shall be signed by at least four hundred and fifty electors whose names appear on the last-completed enrolment list of such party in one or more municipalities within the probate districts of Berlin, Bridgeport, Hartford, New Haven, Norwalk and Waterbury; or a petition signed by at least one hundred electors whose names appear on the last-completed enrolment

precedent that a prospective candidate receive the support of at least 20% of the delegate strength in a district convention on any roll call vote, in order to qualify to run in a district office primary which would select the party endorsed nominee.[2] The plaintiffs represent that they have otherwise satisfied all the requirements of § 9–400.

District conventions are required for the choosing of candidates for all district offices pursuant to Conn.Gen.Stat. § 9–382. The plaintiffs claim, however, that those running for the same office as they, i. e., in the cases of Tansley and Verriker, state senator, and in the case of Rotatori, probate judge, but whose district is territorially confined to a single municipality as opposed to a multiple town district, are not subject to the same 20% qualifying requirement. These lat-

ter offices are classified as "municipal offices"[3] and a convention is not required by law prior to their selection as party-endorsed candidates. The statutes precribe that the local party rules may provide for their selection in one of three ways, namely:

"(1) by the enrolled members of such party in the municipality at a caucus or (2) by delegates to a convention chosen in accordance with such rules by such enrolled members or (3) by the town committee of such party." Conn.Gen.Stat. § 9–390.

To force a primary for a municipal office a potential nominee must obtain 5% of signatures of the electors on the last completed party registration list in the respective district and pay a statutory filing fee.[4] This qualifying difference

list of such party in one or more municipalities within an assembly district composed of two or more towns, *in the case of candidacy for nomination to the office of state representative from such a district*, and also by depositing with the secretary of the state at the time the petition form is taken out a sum of money equal to five per cent of the annual salary of the office for which the candidacy is to be filed, except that, in the case of a candidacy for nomination to the office of judge of probate, the amount deposited shall be the sum of fifty dollars, and except that, in the case of a candidacy for nomination to the office of state senator or state representative, the amount deposited shall be the sum of twenty-five dollars. No signature of any elector shall be obtained on any such petition prior to the close of the state or district convention, as the case may be. Each page of such a petition shall be submitted to the registrar of voters of the town in which it was circulated within the time specified in section 9–399, which registrar shall file the same with the secretary of the state in accordance with the provisions of section 9–403."

2. "District office" is defined in Conn.Gen. Stat. § 9–372(d) as follows:
   "(d) 'district office' means any office for which the electors of two or more towns or of a town or towns and a part or parts of another town or other towns, but not all the electors of the state, may vote and includes the office of repre-

sentative in congress in any of the congressional districts of the state, sheriff, state senator in any senatorial district composed of two or more towns or of a town or towns and a part or parts of another town or other towns, judge of probate in any probate district composed of two or more towns and state representatives in any assembly district composed of two or more towns."

3. "Municipal office" is defined in Conn. Gen.Stat. § 9–372(g) as follows:
   "(g) 'municipal office' means any elective office of a town, city or borough and the offices of justice of the peace, state senator in a senatorial district composed of a single town or part of a single town, state representative in an assembly district composed of a single town or part of a single town and judge of probate in a probate district composed of a single town."

4. Conn.Gen.Stat. § 9–406 provides:
   "Within the time specified in section 9–405, a candidacy for nomination by a political party to a municipal office or a candidacy for election as a member of a town committee may be filed by or on behalf of any person whose name appears upon the last-completed enrolment list of such party within the municipality or, as the case may be, within the political subdivision or senatorial district or assembly district within which a person is to be nominated or a town committee member is to be elected, by filing with the registrar a petition

between a district and municipal classification of nominees for the same office (senator or judge of probate), the plaintiffs assert constitutes an invidious discrimination against them and is in contravention to the equal protection clause provided under the fourteenth amendment.[5]

■ A three-judge district court was convened to hear the plaintiffs' claims. Jurisdiction is present pursuant to 28 U.S.C. § 1343. See Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). The Court finds that the legislature could reasonably conclude that valid practical grounds existed for distinguishing between single and multiple town state senatorial and probate districts and that the challenged statutes are constitutional.

■ State statutes validly enacted are presumed to be constitutional. United States v. Carolene Products Co., 304 U.S. 144, 148, 58 S.Ct. 778, 82 L.Ed. 1234 (1938); Becker Steel Co. v. Cummings, 296 U.S. 74, 80, 56 S.Ct. 15, 80 L.Ed. 54 (1935); Alaska Packers Assn. v. Industrial Accident Commission, 294 U.S. 532, 543, 55 S.Ct. 518, 79 L.Ed. 1044 (1935). It is the plaintiffs' burden, if they are to prevail, to demonstrate the invidious discrimination they have alleged. Home Telephone & Telegraph Co. v. Los Angeles, 211 U.S. 265, 281, 29 S. Ct. 50, 53 L.Ed. 176 (1908); Alaska Packers Assn. v. Industrial Accident Commission, *supra*. In *Alaska Packers*, the Supreme Court, in upholding a California statute, stated:

"Indulging the presumption of constitutionality which attaches to every state statute, we cannot say that this one, as applied, lacks a rational basis or involved any arbitrary or unreasonable exercise of state power." 294 U. S. at 543, 55 S.Ct. at 522.

So also in this case, a rational basis for the enactment of the differing standards for the qualification to run in a primary is present.

At the local level, the structure of the two major political parties in Connecticut is by town committee. The statutes provide for the selection of party-endorsed candidates for municipal offices by caucus, convention, or by the town committee, at the discretion of said local committee in accordance with the party rules. Conn.Gen.Stat. § 9–390, quoted *supra*. While the legislature could have specifically required conventions at this electoral level, it chose otherwise for the obvious reason that it was dealing with

---

signed by at least five per cent of the electors whose names appear upon the last-completed enrolment list of such party in such municipality or, as the case may be, in such political subdivision or senatorial district, or assembly district, or signed by such lesser number of such electors as such party by its rules prescribes; and also by depositing with the registrar at the time the petition form is taken out the sum of twenty-five dollars, in the case of candidacy for nomination to a municipal office, except that, in the case of candidacy for nomination to the office of judge of probate, the sum shall be fifty dollars, and the sum of fifteen dollars in the case of candidacy for election as a member of a town committee. For the purpose of computing five per cent of the last-completed enrolment list, the registrar shall use the last printed enrolment list and the printed supple-

mentary list, if any, of a political party certified and last completed by the registrars of voters."

5. Plaintiffs have not alleged that they have satisfied the five per cent (5%) signature requirement of § 9–406 and they have conceded that to do so would be a more onerous burden than gaining the requisite number of signatures (350 or 100 respectively) under § 9–400. Consequently, insofar as they are seeking to have only that portion of § 9–400 as requires twenty per cent (20%) of the convention vote on any ballot declared unconstitutional, they would have the Court establish a more lenient standard as applied to them, than would normally be applied to those wishing to run in a primary classified as a municipal office. Petitioners' counsel did express at the hearing, their willingness to comply with the five per cent (5%) signature requirement, even at this date.

a different set of circumstances. The recognition of this circumstance at the single-town level is further evidenced by the fact that the legislature provided alternative methods, in § 9–390, for candidate selection even among identical single-town districts, i. e., by caucus, convention or town committee.[6] Thus, it may have felt that when dealing with a single town, the interests of the various party factions are adequately represented by party caucus or by the town committee. In this latter group the members themselves are elected and subject to being challenged through the primary system. Conn.Gen.Stat. § 9–406. The interests and objectives of party members in a single municipality are likely to be more uniform, than would be the case where multiple municipalities were involved.

The legislative history of the state primary laws, the various amendments and the legislative action on proposed amendments not adopted, indicate at least that many of the legislators were of the opinion that the caucus provided adequate representation in the smaller towns. See the Joint Standing Committee Hearings on Election, 1957, page 70 et seq. and 1963, page 40 et seq. This conclusion was based on the less complicated party structure and the similarity of interests at the local level. The same conclusion could reasonably have been reached as to the single-town municipal district offices.

When the party endorsement for a district office is at stake, a convention is required[7] for the apparent purpose of granting proportionate representation from each of the various municipalities in the district. Where multiple municipalities are territorially involved, the interests of the various delegates to the nominating convention are likely to differ at least on local issues. Proportionate representation in that situation is certainly desirable in order to insure that all points of view are represented.

Given this distinction, the legislature was faced with the problem of determining who would be entitled to run in a primary where unanimity was not present at the nominating level. The state has an interest in not having wide open primaries, wherein anyone can run who so desires. Such a procedure would lead to excessive cost and confusion, without any showing that the contestant had a substantial, or even any support within his own party. Cf. Williams v. Rhodes, 393 U.S. 23, 34, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). The state does have an interest in maintaining the integrity and stability of existing political parties, thus encouraging responsible action on their part.[8] See 20 Conn. Senate Proceedings, Vol. 6, Pt. 11, at p. 542 (1955); see generally Barton, The General-Election Ballot: More Nominees or More Representative Nominees?, 22 Stan.L.Rev. 165, 167–172 (1970). In a multi-town district, where the convention system is required, the legislature determined that 20% of the vote for a specific office on any roll-call during said convention, plus a petition containing the signatures of 350 party enrolled members in said district in the case of a state senator; or 100 such signatures in the case of a probate judge, constituted an adequate showing within the party to

---

6. Of the municipalities involved in the districts plaintiffs seek to represent, two provide for endorsement by caucus, Plymouth and Prospect, each in Art. IV. § 1 of their local party rules, and the remaining four do so by vote of their respective town committees, Waterbury, in Art. IV. of its local rules, Beacon Falls (§ 17), Wolcott (§ 15), and Naugatuck (Art. IV, § 1). None provide for local conventions. The State Central Committee, in its rules for towns not having local party rules, prescribes different

methods for the endorsement depending on the population of the town. See Rules of the Democratic Party for the State of Connecticut Art. VI, § 15.

7. Conn.Gen.Stat. § 9–382.

8. There is no allegation here, as there was in Williams v. Rhodes, *supra*, that the Connecticut election laws serve to encourage a monopoly by the two major political parties to the exclusion of all others. See *Williams, supra*, at 31–32, 89 S.Ct. 5.

entitle a candidate to participate in a primary. It is enlightening to note in this respect, that in 1963 a bill to reduce this 20% figure to 10% was referred to the committee on elections and from there sent to conference where it died. H.B. No. 2565; see Joint Standing Committee Hearings on Elections (1963) at page 102 et seq. This action provides some indication that the legislature believed this 20% requirement was essential to adequately protect the state's interest in the electoral process.

■ In single-town districts, where conventions are not required, the legislature was determined that the signatures of at least 5% of the electors on the party's last completed enrolment list was necessary to safeguard the comparable interests served by the 20% convention vote. The parties may still dispute whether it is more difficult to obtain a 20% vote in the convention or a petition of 5% of the registered party electors. It is not for this Court to speculate on the comparable strength or weaknesses

of each, so long as the standards adopted are reasonable and not discriminatory. It must be emphasized, however, that in no instance is a person subject to the 20% requirement compelled to run against one who is not so subject.[9] The plaintiffs have not sustained their burden of showing to the contrary; and if the presumption of constitutionality of state statutes is to be meaningful, the Court must conclude that the Connecticut legislature validly exercised its discretion. This is not a situation like that presented in Williams v. Rhodes, 393 U. S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), where the possibility of qualifying to run was virtually nonexistent.[10] In that landmark case, dealing with one's right to a place on the ballot, the Supreme Court stated:

"It is true that this Court has firmly established the principle that the Equal Protection Clause does not make every minor difference in the application of laws to different groups a violation of our Constitution. But we have also

9. While § 9–390 provides that party endorsed candidates for the municipal offices of state senator and judge of probate *may* be selected by convention, as one of three alternatives available under local party rules in each such single town state senatorial or probate district, the local party rules in only three such towns (the Republican parties of Hamden, New Haven and West Hartford) out of a total of approximately 210, so provide. Other than these three exceptions, all the remaining districts make these selections by caucus or by vote of the local town committee. Therefore, as the law and local party rules currently stand, only a negligible number of the party endorsed candidates for municipal office can gain that status by convention. One seeking his party's nomination for a municipal office, who is not the party endorsed candidate, regardless of the method of endorsement, has only one recourse, that of attempting to force a primary by obtaining a petition signed by 5% of the caucus list as provided in § 9–406, and this is the only primary he could bring about (barring a § 9–406 petition to challenge the town committee which would have to be done impractically far in advance of the municipal office nominations). The multitown district challenger, however, who is re-

quired, like the aspirant to party-endorsement, to seek the nomination via the convention route can, by getting up a petition signed by 5% of the caucus list, pursuant to § 9–407, contest the party endorsed slate of convention delegates with an equal slate of his own. If he fails in this primary, he has the opportunity to seek a primary for the nomination by getting 20% of the vote of the convention.

10. The plaintiffs may gain a place on the ballot without party endorsement by satisfying the requirements of Conn.Gen.Stat. § 9–453, which reads as follows:

"No name of any candidate shall be printed on any official ballot at any election, except the name of a candidate nominated by a major or minor party, unless a nominating petition for such candidate, with his party designation, is filed with the secretary of the state as provided in sections 9–454 to 9–457, inclusive. Such petition shall be signed by a number of qualified electors equal to one-half of one per cent of the votes cast for the same office or offices of the last-preceding election."

Said petition must be filed at least ten weeks before the election. Conn.Gen.Stat. § 9–454.

held many times that 'invidious' distinctions cannot be enacted without a violation of the Equal Protection Clause." 393 U.S. at 30, 89 S.Ct. at 10.

The present case deals with that type of minor difference which *Williams* does not proscribe. The states have broad discretion in formulating election policies. Williams v. Rhodes, *supra*, at 34, 89 S.Ct. 5; United States v. Classic, 313 U.S. 299, 311, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); Voorhes v. Dempsey, 231 F. Supp. 975, 977 (D.Conn. 1964) (three-judge court). The statutes herein challenged represent a valid exercise of that discretion. It may well be that the plaintiffs have strong feelings that this legislative distinction creates an unnecessary burden upon prospective candidates for public office, however, if their claim has any merit their proper forum is before the state legislature. The plaintiffs have shown no invidious discrimination. All three petitions are denied and dismissed.

So ordered.